*92 Opinion op the Court,
by Judge Mills.
MUCH of the history of this case, may be learned from the decision on a judgment at law, between the same parties, at the fall term of this court, 1819, to which reference is made. See 2 Marsh. 112.
After that decision, George W. M’Campbell, against wjhom that judgment was rendered, filed this bill in eclaity, still asserting and claiming the election of his brother, Andrew, to take an education in lieu of the and the subsequent agreement to accept four hundred dollars and learn the farmer’s trade, and finally the compromise between himself and said Andrew, after his arrival at age, to accept one half the land, free from hicumbrances, in lieu of the four hundred dollars, or in lieu of the whole of the land, incumbered by the debts of their testator. He alleges that it was expressed by testator> at the time he dedicated his will, as his intention to change the debts on the home-plantation, which is now the subject of controversy, and that the writer- had omitted to insert the clause; but he contended that such was the construction of the will, as it now stands, and that all the family had so understood it; and that in consequence of this expectation and be-L.eL he had discharged out of his own funds, the debts of the testator to a large amount, or had furnished the *93 executors with money to do it, and had also paid off the legacies given by the will to the daughters; and that in all this, the defendant in chancei'y, Andrew M’Campbell, had acquiesced, and in pursuance thereof, had receivéd half the land laid off and conveyed to him, as detailed in the trial at law. He further charges, that the said Andrew, by the consent and permission of his mother, had, in her lifetime, enjoyed and used for many years, twelve acres of the home-farm, for the rents which, he ought to account. He, therefore, prays that the said Andrew M’Campbell may be compelled to vey the land to him, or if this cannot be granted him, that the said Andrew shall be compelled to pay the debts and legacies charged on the farm, if they were so charged, and if not, that he the said Andrew, and the rest of the children, may be compelled to pay their rateable proportion of these debts and legacies; that Andrew may be compelled to pay for valuable improvements, and account for the rents of the twelve acres which he had enjoyed in the lifetime of Jns mother..
^ oft]rlg full posses-the “0aasse10&0. during her natural life, ^ b°a" ¿t, and the support of the ^ldb®y un" charge; next, all lawful, debts deIwe6* the land with payment aa¿her0d0efbts’ cannot be introduced to ^ator m in* tended it.
Debts of a tesh°3 tees, rateaWy? ,®00.0/^' *n0srtj0 e portions which each had received.
tbe exe0utor and all concerned believed a. Jaabe °harane_ able with the payment of debts, & the executor accordinglypaid them, equity will entertain jurisdiction of the case, and compel the legatees to refund.
*93 The rest of the children answered, adteditSng the legations of the bill, and that they were accountable for their proportions of the debts and legacies, unless they were charged by the will on the mansion tract. drew answered, and relies on his judgment at law as conclusive against the legal title being in the complainant, and as putting asleep the question of the farm having been vested in the complainant, by virtue of his supposed election to accept an education. As to the last agreement, after he was of age, in which he received from the complainant a conveyance for half the land, it having been first conveyed to the complainant by the executors, he pleads and relies on the statute to prevent frauds and perjuries. He denies the existence of debts against the estate, or payment of them, and contends that his testator died possessed of considerable for before the land is reached in the hands of the devisees. personal estate, and that it ought to be accounted
The court below dissolved the injunction as to land, and refused a conveyance thereof, and after directing an account to be taken, decreed that each child should refund, rateably, to the complainant, the debts and legacies which he had paid; that Andrew should pay for legacies charged upon the farm, and for imprbvements made since the deed made to the complain *94 ant by the executors, after deducting rents; and, also, that rents should be charged against Andrew on the twelve acres, which he enjoyed in the lifetime of his mother. From this decree, Andrew M’Campbell has appealed.
Fjntraot within The63 act to prevent frauds, is void^it'is*' valid’to every purpose, except that its breach, or a bill for a cutione eae" not' be suí tained, but it is goad as a fence61' °rf 'a" is fulfiiled by the parties, it any5 other aS contract; if dissolved, the same meas-&c. as in other cases,
Ar-haser the contract11 is dissolved, has a lien on neyadvatí-0 ced; but it is erroneous to rtcrrmt thfi keep it at a reasonable Ihe^ebt is discharged; decree if land is not redeemed in should be sold, and the Pj°°®jalse¿p¿0 [^discharge! permit the purchaser to
*94 The decree of the court below, so far as it decides against the appellee’s right to the land, cannot be questioned by the appellant, as it is so far in his favor; nor can it come before the court on this appeal, unless on a reversal of the decree, this court shall be led back to correct all the apparent errors. We shall, however, observe that the question as to the legal estate, was tried in the action at law, and whether there was such an election of an education on the part of Andrew, as divested him of his title under the provisions of the will, *s a fiction set at rest by that trial, so far as respects this suit. Whether the ratification of Andrew, after he came of age, of former agreements, and his acceptance half the land, did, or did not vest an equitable estate in his brother George, is a question properly triable in equitj^and could not be tried in the action at ]aw> in reSp0nse to this, the appellant has relied on the act of assembly to prevent frauds and perjuries, When this arrangement was made, it was supposed betwesn tbe parties that the executors alone could eonvey the title. A surveyor was procured by the appellant, and he divided the land. The executors, who Were two of the heirs made defendants to this bill, conve}7ed *-° George to whole land, and George conveyed the half thereof to Andrew, and he then executed a receipt to George in full of all demands against the estate. ^be executors had no authority to convey, and of course their conveyance to George passed no title, and although there was an agreement on the part of An-f[l.ew to accept the deed to the half in full of his interest in the estate, yet as he gave no writing conveying his interest in the land or binding himself to do so, his plea of the act must prevail, and the chancellor did right in refusing to decree a conveyance,
®ut as Andrew, by this agreement, admitted his brother’s title to the half of the land now in contest, and the parties then supposed that the title to the half now recovered from George, was vested in him, and under the faith of this agreement and understanding, he proceeded to improve the land, according to repeated de *95 cisions of this court, the court below did right in compelling Andrew, who now dissents from this arrangement, to pay for all lasting and valuable improvements or ameliorations of the half of the land now in contest, lessened by the reasonable rents of the premises in dis- ** ‘ r pute.
(The widow, farm is°willed during her hfe, may perpy ,t without paying rent
fhoulcf°be°P' compelled to account for 31’®a£frsona3 ceived by him, before j^e°aE cal1011 por ho-portions of dem-
persona] e3. tate is the proper fund amentofdebts and legacies, though real estate may be charged with either.
*95 Nor is there any ground for supposing that the debts of the testator are charged on the mansion farm by the will. The only provision with regard to debts, is to this effect:
“I give and bequeath unto my dearly beloved wife, Martha M’Campbell, the full, free and uninterrupted possession of mansion house, plantation and stock, and profits thereto belonging, during her natural life, for her own use and benefit, and support of the children under her charge. Next, all lawful, just debts discharged.” He then devises to James M’Campbell, one of his sons, 250 acres of land, another tract; to his son John, a third tract, under the condition that he paid his son George, now appellee, £100, after George came of age; to William, another son, he devised a fourth tract, on condition of his paying to another son, Samuel M’Campbell, £100. Then he inserts these clauses: “To my son, Andrew M’Campbell, I give and bequeath the plantation, my present place of residence, containing 200 acres, after the death of his mother. To my daughter, Margaret, I give and bequeath the young sorrel mare and saddle, and whenever she shall marry and remove her residence, she is to have one feather bed with • its furniture, two cows, and as soon as her brother can furnish her from the home-place, she is also to have a desk or bureau, whichever she may choose. To Martha M’Campbell, my daughter, I give and bequeath a good mare and saddle, and whenever she shall marry and remove, she is to have one feather bed with its furniture, two cows, and as soon as her brothers can furnish lier from the home-place, is to have a desk or bureau, whichever she may choose. And to Jane Logan, I and bequeath £59, to be paid twenty-five pounds from the home-plantation, and twenty-five by John M’Campbell, which payments are to be made as soon as is convenient, To my daughter, Nancy Elliott, I give and bequeath cow, formerly lent them, and a yearling heifer. And to Molly Lawson, I give and bequeath £5.” •
Some months after he added this codicil:
An executor under liar circumcharged with the amount of property theluvertory, but only with the which^came to hia hands and was apilis plied to own use.
A person paying a legacy charged on a tract of land which he is under an im pression he. owns, may recover it from the owner.
the payment of debts, they ío^in^order lst^hegeneral personal estate; 2d, fioally lind* expressly de,be tate'deseended; and 4th, «state speoie'a3 thou°-h1S" charged'’gen-with of debS”6"
*96 “As a codicil or small alteration to the former will, I, Samuel M’Campbell, as aforesaid, do leave it as my last will and desire, that my son, George Washington M’Campbell, after my decease, is to have' the care and management of the plantation on which I now reside, for the care and maintenance of his mother, and those of the children whose home and residence it may be, as long as he may see cause to act in that business, or until my son, Andrew M’Campbell, shall arrive at the twenty-one; and provided my son Andrew may choose to go to education, instead of the plantation, that may be done, and the plantation here alluded to, then to be George W. M’Campbell’s, by his paying the expense of his education,, and that to be done before he may come age.”
Notwithstanding the clause in this will relative to debts, is expressed defectively, as if something was in-ten(fecb not expressed; yet as it is capable of construction as it stands, and the debts thereby are left to be discharged out of the general fund not specifically bequeathed, we cannot add thereto or alter it; but must disregard the proof introduced, conducing to shew that it was intended to charge the debts solely on the mansion-farm, so far as it is contended that such proof can alter the will.
Nor do we conceive the court below erred in directing the debts to be paid rateably, according to the portions which each had received, with the exceptions and modifications hereafter stated. As the debts were chargeable on the general fund, and were paid by George, on the mistaken supposition that they were charged on the mansion farm, and that the farm belongbim, be ought to recover them. This appears to have been the general mistake of the family, and conformable to this, Andrew divided the land and accept-a conveyance for one half from George. As the matter was settled in this way, by the mutual mistake of all concerned, and Andrew has disturbed this settlement by correcting the mistake, it is equitable that he anc^ tbe rest should restore the benefits derived from that mistake, before he is restored to what he has lost by it; for we conceive the proof clear, that this was the mutual mistake of all parties concerned. In consequence of this, George furnished the executors with money to pay the debts, and Andrew accepted half the *97 land as his portion, free from debts, after his arrival at age, and executed a full receipt.
To this arthere is^m exception, & the second & *ulees places, where the estate set f°r *he debts^is0 charged generally, & not y*
Legatees who have receivgpeffg81]* ** ores from the personalty, fo^th^whole amount received, where j,80 fore the real estate can be tou°he<3.
† charged^pon the issue of 41?e lands de^88'^8*®^ footing with land, when to Contribute to the payment of debts, The le atees must contribute ratably to the arhDt with the landholders, according to value.
*97 The objection made to this, .on the part of Andrew, is, that George cannot recover against his co-distributees in this suit, but must resort to his action at law against the executors, for money loaned or advanced for the purpose of paying the debts. It is true, that for such advancement, made in the ordinary way, he might . compelled to resort to his action at law; but this was advanced under peculiar circumstances. The rest admit their responsibility, if the debts were not charged on the farm, and Andrew participated and concurred in the general mistake, though he now seeks to avoid the consequences of its correction. If the executors had advanced this money, there is no doubt they might sustain their bill to compel contribution; and as George, one of the distributees or legatees, has done it, on the supposition of all concerned, that it must come out that part of the estate, at last, which he held, when it did not belong to him, we conceive a bill in equity may be indulged in his favor, to set the whole matter right and avoid circuity of action. One distributee maintain such bill to compel contribution against others, when they have received more than their proportions, and this is in fact the result of what has happened from the mistake of the in this case.
The court below, after having settled the account and ascertained what was due by Andrew for improvements, and his proportion of debts and legacies, decreed in favor of George, a lien upon the land, and that he should keep it, at a reasonable rent, until this demand was paid, and this part of the decree is objected to by Andrew. George claims this land,'first, under the will of his father and the election of Andrew to accept an education. Whether he could or could not have such lien, or recover improvements, under that claim only, we need not now determine; for the chancellor has not based the decree on this claim, but has commenced the account from the date of the deeds from the executors to George, and from George to Andrew, under George’s second claim, by virtue of this parol agreement; and the question is, whether, under this, he is entitled to such lien. Here we may observe, that a contract which comes within the act to prevent frauds and perjuries, is not void entirely. It is valid to some pur *98 poses, or, indeed, to every purpose, except that an action at law cannot be sustained for its breach, or a bill in chancery to compel its execution. It is, nevertheless, good as a matter of defence. If it is fulfilled by Partiess it is as good as any other contract. If it is dissolved, precisely the same consequences follow.— Hence, this court has allowed the same measure for rents and ameliorations, in such cases, as on the clissolotion of others. Whether there be, or be not, a lien, does not depend so much upon what kind of contract there is, as upon the question whether there was or wag no(. a contract5 0r, jn other words, whether there was or was not a consent of the parties to the attitude jn which they stand; for the doctrine of liens is based uPon consent, and cannot exist without it. Now, although the parol testimony that there was such contract, is inadmissible to prove that George is entitled to si,eo^c execution, yet it is good to show that he advanced his money under an understanding that he was the purchaser of the land; and it is well settled, that the purchaser has a lien for his money advanced in payment for an estate which he cannot keep, as well as for his ameliorations made thereon, when he supposed it to be his own. We, therefore, conceive that although this contract. cannot be specifically executed, because of the statute, yet it is valid to give a lien, and that the money advanced by George was the same as if advanced by a purchaser under any other'contract, which became, or was, invalid; for he was in fact the purchaser of the land, under the supposed terms fixed by his ancestor. But we do not see the propriety of the mode taken by the chancellor to effectuate this lien; that is, to permit George to-keep it, at a reasonable rent, until the debt is discharged. This might do injustice to both. The general effect of liens is, that the subject, if not redeemed in a reasonable time, ought to be sold, and the proceeds thereof appropriated to discharge what is due thereon, and the balance to the use of the original holder. Such ought to have been the consequence in the present instance.
The settlement of the 'with^heex*1' ecutors, is evidence beArties*of tb amount° of 6 debts.
Interest allowed the ex ecutor on him, which he was not bound to pay, sums paid by
The manner of ascertaining the value of a remainder.
There are divers exceptions taken by Andrew to the details of the decree, some of which appear to be well founded. He is charged with one hundred and eighty dollars for the rent of twelve acres of the mansion farm, in the lifetime of his mother, which, according to the *99 appellee’s own statements, were occupied with the consent and permission of the mother; nor does it appear to have been objected to by the appellee, who was the manager of the farm, nor was there any agreement to pay rent. The farm, at the time, belonged to the mother, and if she permitted the use of any part of it to be made by any one without rent, she indubitably had a right to do so, if she did. not thereby deprive the farm of the means of paying the charges upon it, which does not appear to have been the case. This item in the decree, we deem erroneous, and it ought to be dismissed from the controversy, leaving the representative of the mother, or whoever permitted him to enjoy the land, to recover the rents thereof, under any contract which Andrew may have made for the payment thereof.
It also appears in the controversy, that there was an inventory, or an appraisement of the personal estate, made and returned; and although it was first liable to the payment of the debts, it was never sold for the purpose of raising the necessary funds. A small portion of it, indeed, was appropriated in discharge of debts; the residue was used, and perhaps worn out and deteriorated by the mother and the children who resided with her, and some remained at her death, which George kept. It is insisted, that the decree of the court is oproneous in not compelling an account of this, before the legatees were, charged with their respective portions of the debts. This objection to the decree is well founded; for although wills have no operation upon creditors themselves, so as to prevent their reaching the estate of the testator, yet when the question comes to be settled up between the legatees or devisees, or between them and the executors, the question, as to what fund is to be applied to the payment thereof, is one of an important character. And as between real and personal estate, whether the latter be or be not specifically bequeathed, the personal is the proper fund for the payment of debts and legacies, and, in general, it ought first to be thus applied, though the real estate may be charged. 2 John. Chan. Rep. 614. In this case, therefore, as the lands are not expressly charged, the personalty ought to have been devoted to the purpose, and as much of it now, as can be, ought to be made use of for that purpose. We would now be under *100 stood, not to speak of those legacies which were expressly charged upon the lands, as included in the term, personal estate; of them we shall speak hereafter.— According to this rule, the personal estate ought, and must be accounted for. Here the inquiry arises, whether the complainant ought to account for the personal estate, so far as it has been appropriated to debts, and the residue left at his mother’s death, or ought he to be charged with the appraised value of the whole, and as it ought to have been appropriated to the discharge of debts? By the arrangement made with the executors, he paid the money for them, and he ought not to stand in a better attitude than they would;, and that it was their duty, in this case, to have made the' most of the personal estate, in the payment, of the debts, according to the construction now given to the will, there is no doubt; and if they were in a controversy now with creditors, or with anyof the distributees who had not participated in the arrangement that was adopted, there could be no hesitation in charging them With the full value of the personalty, or of making the same charge against George W. M’Campbell, who stands, as to this, in their stead.
There are, however,, circumstances in this cause which ought to excuse them from such charge. The executors were two of. the heirs- and distributees. The greatest portion of the personal estate was directed by . the will to pass to the mother during life, for the maintenance of the family, and all of them appear to have believed that the debts were charged on the mansion-farm. According to this belief, it appears to have been an arrangement assented to by all., that the mother and family should keep and use the personalty, and George, the supposed owner of the mansion-tract, on which they all believed the debts to be charged, should pay the debts himself. In this arrangement, every one of them appears to have been concerned, both executors and other legatees. They all, except Andrew, now contend, that the mansion-tract is still liable, and if not, admit their liability to contribute, and Andrew himself, as strongly concurred in and sanctioned this arrangement, as any of them, by his different bargains, and especially by the last, in which he took a conveyance for his part of the land, and executed his receipt in full. By this, arrangement, a great portion, of the personal estate* *101 which might have paid debts, is lost, and as they were all participators in it, it does not seem equitable to charge one, or two, or three of them, with the loss, in which they are equally guilty. Of course, we conceive that George must only be charged with such part of the estate as came to his hands, and was applied to his own use, and that the debts ought also to be lessened only by that part of the estate which was paid in discharge of the debts. Thus, the loss to which they all contributed, will be borne by them, ratably, and such ought to have been the account taken.
The complainant has, also, paid sundry legacies, which he supposed he was bound to pay, as well as the debts, in consideration of keeping the home-farm. For these he also seeks remuneration. It is contended by the appellant, George, that one half of the legacy of Jane Logan was to be paid out of the estate on the home-farm, and was not a charge on the land itself. We do not concur in this construction of the will. The devise is in these words: “ To Jane Logan I give and bequeath £50, to be paid £25 from the home-plantation, and £25 by John M’Campbell.” Now, as John M’Campbell had a tract of land previously devised to him, and on another tract devised., the testator had charged legacies, it is evident that he intended half of this legacy as a charge on John’s land, and as the home-farm went to another son, the intention is equally clear, that the remaining half of this legacy was to be a charge on his lands; and as George, the complainant, paid this legacy, supposing the land his, when it was Andrew’s, it is right that Andrew should remunerate him, and the court below acted correctly in charging Andrew with it.-— The court below has, also, charged Andrew with the two bureaus, one gotten by Martha and the other by Margaret, under the will, and also with the mare gotten by Martha, under the bequest thereof, as legacies charged by the will on the home-farm or mansion-tract of land; and the propriety of this is questioned, and it, is contended that these are not charges on the land.— As to the two bureaus, we conceive they are rightly charged. The language of the will directs íhém to come from the mansion-tract; and although it might be supposed, that the intention was, that tney should be paid out of the profits of the land, yet when it is considered that the same language is usecl in these cases, that *102 is employed in the bequest to Jane Logan, and that hers is coupled with a circumstance, before noticed, which shows that it was a charge upon the land, we adopt the same rule with regard to these also. As to the mare paid to Martha, we see no propriety in charging her upon the land. Not a word is said to that effect, and it is evident that a general legacy from the personalty, was intended. There is, therefore, no pretext for charging Andrew with this legacy. As it was to come out of the personalty, and if the whole had been applied to the payment of debts, as it ought to. have' been, the legatee could not have received it, and as it was paid to her wrongfully, or to iier husband, he must be compelled to restore it to George, the complainant. This will lessen the amount out of which Martha, or her husband, will be compelled to contribute, ratably, to the payment of debts. To the rest of the account against Andrew, we perceive no well founded objection.
The question how the debts paid by the complainant are to be levied upon the respective parties, forms another inquiry. In this, we cannot sustain the decree of the court below. In marshalling assets for the payment of debts, they take the following order: First, the general personal estate; second, estate specifically and expressly devised to be sold; third, estate descended; fourth, estate specifically devised, though charged generally with the payment of debts. To this arrangement there is an exception, and the second and third rules exchange places, where the estate' set apart for the payment of debts is charged generally, and not specially. See Livingston, &c. vs. Newkirk and wife, 3 John. Chan. Rep. 313, and cases there cited. Taking this arrangement for a guide, and the rule before noticed, preferring the personal estate as a fund for debts, before real, it will necessarily follow that all those who have received general or specific legacies, from the personalty, must account for the whole received, if the debts so require, before the real estate can be touched. Of course, the legatees, Margaret, Martha, Nancy and Molly, or their husbands, must account for their, whole legacies, in discharge of the debts paid by George, as the debts are large enough to require it, and after that, they cannot be ..subject to further contribution. We have, among the legacies named, made no distinction between those *103 that are specific and those that are general, although that given to Margaret is evidently specific in part, not because there is no difference in law between them; for general legacies are subject to debts, before those which are specific; but because the debts here are large enough to consume the whole, and the distinction, therefore, need not be attended to.
The legacies bequeathed to the complainant, to Samuel, Jane Logan, and a bureau each to Martha and Margaret, although in money or personal estate, we place on a different footing. They are charged upon and. issue from the lands devised, and therefore stand on the same footing with land, when called upon to contribute to the payment of debts. They must contribute ratably, and proportionably to the amount of each, with the landholders, according to value. After the special account, for which Andrew alone is chargeable, in favor of George, is ascertained, the amount, of debts must be taken from the executorial settlement with the county court, which we deem good evidence between the parties. This amount must first be lessened by the personal estate actually appropriated towards the payment of any part of it, as well as that which remains and was gotten by the complainant. The legacies of personal estate must be applied next, as before directed, to discharge the amount, and the residue must be apportioned between the devisees of land and legatees of legacies arising from land, as before directed. The part or proportion of the complainant must be ascertained and deducted, and the remainder be decreed in due proportions. According to these principles, the account must be taken in the court below, which is, in several respects, different from that already taken. We will also add, that it is objected that the court below erred in allowing the complainant interest on the sums paid by him for debts and legacies. To this we can see no forcible objection. The complainant paid these sums under the supposition of all concernéd, that they were the consideration for the land; and as he has lost the land, he is compelled to account for its reasonable rents, profits and injury done thereto. Under such circumstances, it cannot be equitable to allow him legal interest, as has been done, on its restoration.
There is another apparent error in assessing the debts on the devise to Andrew, in the court below. *104 He is charged with the legacies paid by George, which were charged on the home-place, and yet his land is not lessened in value by those legacies. Other lands, devised to some of the rest, were charged with legacies, and these legacies were deducted from the value of their respective devises; but this was omitted with regard to the land of Andrew. If Andrew is now to be charged with these legacies, in favor of George, who first paid them, it is evident that the devise to him was lessened to that amount. One half, therefore, of the legacies left to Jane Logan, and the two bureaus to Margaret and Martha, must be deducted from the price of Andrew’s land, before the sum can be ascertained, on which his proportion of debts is charged.
There is still a heavier charge on the estate devised to Andrew, which remains to be noticed, and which must greatly lessen its value. The life estate of the mother lessened the value of this land, and Andrew only tool? the remainder in fee, and for, the value of this rémainder only can he be charged. Here the difficult question is presented, how is the value of this remainder to be ascertained? The estate is divided, and after the life estate of the mother, he then, and not before, is to possess it. When a life estate is still existing, there is no other way of ascer taining the value of its remainder, b;ut by making a probable estimate of the length of the life of the holder, health and age considered, and then raising an annuity equal to the interest of the value of the estate, and calculating its present worth at a fixed ratio, supposing it to continue during this probable length of -life, and deducting that present worth from the value of the estate, and the residuum is the worth of the remainder. See Swaine vs. Perine, 5 John. Chan. Rep. 482; and Evertson &c. vs. Tappen, ibid. 497.
Here, the existence of the life of the mother, after the death of the testator, can be accurately ascertained. The interest for one year on the value of the land devised to Andrew, must form an annuity, the present worth of which is to be ascertained for the given number of years,'at the ratio of six per centum per annum. But it appears that, pending this life estate, and before the death of the mother, Andrew, by the arrangement with .George, got possession of one half the estate, in quantity, after it was laid off to him, which creates two periods, on each of which the worth of an annuity must *105 be calculated, to wit, one from the death of the testae tor until Andrew took possession of a part of the estate, and the other from this last period, until the death of the mother. Of course, to ascertain the value of his-remainder, in propertion to which he must pay debts, let the value of his land be taken, first lessened by the' aforesaid legacies, which he has to pay, and let its interest for one year, be the annuity raised; and next, let the present worth of this annuity be ascertained at the-ratio of six per centum per annum, for the time which-elapsed between the death of the testator and the commencement of Andrew’s possession of the share of the estate, which was conveyed to him by George; next, let the part of the estate, of which he did not thus get possession, be ascertained, and by the interest of this last value for one year, let a second annuity be raised, and its present worth also be calculated at the ratio of six per centum per annum, from the time Andrew took possession of that part of the estate which lie holds under the arrangement with George, until the death of the mother; next, let the two results, that is, the present worth of each of these annuities, be add'qd together, and the amount be deducted from the full, value of the devise to Andrew, first lessened by the legacies which he has to pay, and the balance left, will be the worth of the remainder which he took under the will,, according to which, he is to be charged with his proportion of the debts paid by George, and which he is entitled to recover ratably from the family.
The decree of the court below must be reversed with costs, and the cause be remanded, with directions to the circuit court to cause such further proceedings to be had, and such decree to be rendered, as may be conformable to this opinion.