Judge Mills
delivered the Opinion of the Court.
Clay, the appellant, brought hispe tútion ant} summons against the appellees, on a note for $2240, executed by them directly to Clay. The appellees pleaded the following plea.
“The plaintiff in his action against them ought not to have and maintain, because they say, that the note in the Petition mentioned, was made and executed without any good or valuable consideration.” And on this plea the parties went to trial,
The evidence of the appellees showed in substance the following facts, omitting such parts as are impertinent:
That Clay the appellant, possessed sundry shares 0f stock in the late Kentucky Insurance Company, some*nBe before the charter was to expire by James Prentiss procured a majority of shares in the stock of that bank, and thus acquired the as-c#ndency over it, and by his votes dispensed with the service of the directors for some months before *645 the expiration of the charier, the bant being then in a sound »~i(l sol-vent condition; but that Prentiss immediately utter he tool this control, began a course calculated to destroy its credit ami bring it to insolvency; Unit he issued us much of its paper as could well be got into circulation; and applied the specie, the contents of the bill box and other funds of the bank to his own private purposes, until the bank was ruined. That one of the clerks of the bank began to give intimations to any that had .dock remaining in bank, that the bank would be, or was insolboot, and that they had better sell their stock to Prentiss, as iic continued to buy; that on P.entiss making propositions to the appellant to buy his stock, he, the appellant, before he closed, the bargain, enquired of sundry persons about the value of its stock, and the solvency of the institution, and the suspicions afloat relative to the unsound condition of the hank were communicated to him, and it wras intimated to him that the bank would .probably fail, or was insolvent, and he thereupon closed the bargain with Prentiss, and sold him his stock at the price of six thousand five hundred dollars, and Prentiss agreed to give the present appellants, or some of them as his endorsers, and executed and delivered to the appellant the following endorsed note:
Original note the stock01
Explosion of Pflntisíand h, exit
“Lexington, December 30, 1817.
Six months after date í promise to pay John T. Mason, jr. or order, six thousand five hundred dollars, negotiable and payable at the ban,k of Kentucky, without defalcation, for value received.
[Signed] James Prentiss.”
Endorsed. For value received I assign the within to Sebree and Johnsons.
[Signed] John T. Mason, jr.
We assign the within to Green Clay.
[Signed] Sebree & Johnsons.”
Sometime in the same winter or spring, the In-sarance Company blew up, its insolvency became notorious, and the embarrassments and insolvency *646 of Prentiss became well known. He conveyed his visible estate to sundry persons, in trust, to secure some of his debts, and on the 19th of March, 1818, he made one inclusive deed of trust of all before conveyed, and also what had been left out of former conveyances, to William T. Barry, .(Esq. in trust to secure John T. Mason, jr. for sundry endorsements, which he, Mason, had made for him, and among the rest, this.endorsement to Green Clay, and the succeeding day, more than three months before this note became due, secretly and in haste, he took his flight from the country, leaving his family in Lex-r ington, some supposing that he never would return j and others conjecturing that he might; that the different creditors and their trustees seized and took away his property, till his family stripped of every thing, ceased to keep house, and boarded with others. Barry proceeded under his deed of trust to sell all the estate contained in his conveyance, which he could find, for the indemnity of Mason.
Clay’s suit on the original note, accommodated.
Note sued on.
On the 25th of September, 1818, Clay issued, on his note to Prentiss, a capias returnable to the succeeding November term, which was returned, “no inhabitant,” fey the sheriff of Fayette, where Prentiss last resided. But before the return day of this writ, the endorsers accommodated this matter with Clay, and agreed with him to divide the debt into three' instalments, payable in one two and three years, and to give their separate notes for each, with additional security, one of which is the note in contest, and reads thus:
“Lexington, October 28th, 1818.
Two years after date we promise to pay Green Clay or order, two thousand two hundred and forty dollars, payable and negotiable at the Farmery’ and Mechanics’ Bank of Lexington, without defalcation, for value received.
[Signed] Uriel Sebree,

John T. Mason, jr.

Rich. M. Johnson,

James Johnson,

William Ward,

Robert J. Ward,

Bénjamin Johnson

^irst su¡t discontinued,
Motion for ants evidence was insufficient — over-ru ef ’
Where the defendant relies on an affirmative plea, after he has closed his evidence, the plaintiff may movathe court to instruct the jury that the plea is not supported, which shall be decided as in case of a motion by plaintiff for a nonsuit.
l’h is arrangement was made without tíié cónsent of Clay in his absence, but in pursuance of his in-fetructions, and the suit of Clay against Prentiss was to be dismised. The counsel of Clay did not, at the moment give up the note of Prentiss to the brokers of this last note, because they did not require it to be done, but lie continued to hold it subject to their order or demand for sometime after-wards. The suit of Clay was not discontinued by an entry on record for a length of time, through the inattention of counsel. The entry was however ultimately made, and nd declaration was ever filed.
After this evidence was closed on the part of the defendants below, the plaintiffs counsel moved the court to instruct the jury, that this whole evidence given on behalf of the defendants was incompetent, irrelavant and insufficient to prove or support the defendants’ plea. The court overruled this application, and the plaintiff excepted.
There are several other legal questions raised in the record, and instructions given and refused, and exceptions taken. But as the discussion and decision of this question must supersede or involve many others, we will first consider it.
It is clear that the defendants by their plea, whether it fitted the evidence or not, took upon themselves the onus probemdi, and their attempt was to bar the note by admitting its execution, and avoiding it. This motion was therefore in the nature of a motion to instruct as in case of a n onsuit, made oft the part of the defendant. Such motion is often made, not only because qf a variance between the declaration and the evidence, but predicated on the insufficiency of the evidence to support the declaration, because some important fact dr facts necessary to support the action is not proved. Then it answers in modern practice the office of a demurrer to evidence. And as it is indulged on the part of the defendant, when he holds the negative, to make the rights of the parties mutual and equal, a motion of the same nature may be allowed on part of the plaintiff, when he holds the negative. In all such motions, however, the evidence ought to *648 be clear ah cl not contradictory or doubtful, and évJ cry fact which the evidence conduces to prove against the party making the motion, ought to be taken as proved.
Objection to the consideration of tho original note, and instruction of the circuit court on that point.
:\oto given by Prentiss and his sureties to Clay, lor the price of stock in tho Ky. Insurance company, which Prentiss had obtained tho management of, and by his wrongs, ren-,deved worthless, with a 'full knowl* ec|ge of these !aots, wason 'Nticicnt cor>to both min3 cipal and' ’ sureties,
*648 It has been insisted in Argument that tliis evidence tended tb impeach or show a failure of consideration in the note in contest, in two particulars.
First, because the stock of Clay was worth nothing, and was of no value when he sold it, and that fact was known to him, and therefore, there was no consideration for the original note of Prentiss, and of course there could be no consideration for this note, as it was given for part of the sum scoured by the first. This conclusion seems to have had some weight on-lhe mind of the court below, as we find that court, after all tho evidence was given, instructing the jury, “that if tlrtiy believed from the evidence, that the sale and transfer of said stock was no injury to Clay, and no benefit to' Prentiss, there was no consideration for the note given by Prentiss to Mason, and assigned to Clay, and that neither Prentiss, nor their endorsers; were bound to pay it: and if the note sued on, was given in part discharge of the first, the latter would also be without consideration, and they ought to find for the defendant. But if they were of opinion that Clay had sustained an injury by the sale of his stock, or Prentiss was benefitted thereby, then there was a consideration for both notes.”
In stating this logic on the part of the defendants he low, an important proposition or consideration is loft out of view, which, when brought in, overthrows the conclusion, and turns its point directly to the opposite side, and that is, tiie enquiry who rendered this stock held by Clay worthless in the first place, if Clay had clone it, and then had sold and transferred it to Prentiss, concealing what he had done while Prentiss was ignorant of it, then there would be some ground for the failure of consideration. But directly die reverse, from tlie evidence, is true. Prentiss himself had wrongfully ruined the bank and destroyed the value of the stock of Clay, of which he had the management, with *649 put Clay’s assent. This laid a double obligation on Prentiss to make good the stock, and to pay its val,ue to Clay, even without any stipulation to that effect. Now if we suppose Clay to have been fully apprised of these acts of Prentiss, and that his stock was rendered wholly worthless by the management pf Prentiss, and that he had set up a claim against Prentiss tor these wrongs, and Prentiss to secure to him a compensation, had executed his note with the appellees as endorsers; can there be a plausible pretext for saying that the consideration of such note \yas not good/ Indeed this evidence, that Prentiss had firsjt by wrong, ruined the value of the stock of Clay, and then that the first note was given as the price of it, instead of weakening the consideration of the first note, renders it much stronger than it would be if the note was simply given for good stock of full value; because the claims of both law and conscience lay still more heavy on Prentiss to make the stock good, and to restore what by fraud and wrong both on Clay and the public, he had taken from him. Nor is there any difference between Prentiss and bis endorsers on his first note in this respect. They follow his fate, and claim their discharge, by discharging him. Every fact which conduced to shovy that he was not bound to pay, goes to release them, and every fact which shows Prentiss bqund, binds them. There' is n.o attempt to show that Clay ever induced them to become endorsers for Prentiss, or deluded them into the measure, or that he ever spoke to them on the subject. It is, therefore, evident that they trusted Prentiss and confided in him, and not Clay, and if they became responsible for Prentiss, at his solicitation, they must look to him for their indemnity, and not the endorser of the note. It follows therefore, that the instruction given by the court to the jury, was calculated to mislead them, b,y fixing their attention wholly to the question, how much the stock was worth when sold,' without regard to the question, who made it worthless, whether Prentiss or Clay. It also results that the court ought to have excluded tlxe evidence from the jury, .or to have decided it insufficient, unless some other ground is discov *650 ered in it tending to show a failure of considera* ^0n‘
Objected, that the note stead of that on which the appellees CTsreafter°rS" Ciay’s negligence in suitagainst Prentiss,1 was without sufficient consid-
wbaNs're^ quirecToFan assignee, when the ob-senTfrom the state before the note fells ‘k®*
Judge Owsley not concurring.
This brings ns to the second and only remaining ground pointed out in argument, or which we can discover, on which it may be contended that the evidence conduced to show a failure of consideration. Thus far the court concurs in opinion, but on the .second point there is a difference.
Judge Mills’ Opinion
Prentiss having left the State in March, 1818, and Clay’s note falling due on the 30th of June, in the same year, and Prentiss not being returned, Clay might have issued his writ against Prentiss returnable to the September term of Fayette circuit court, But his writ was not issued till during the September term, returnable to the November term following, when it was returned, “no inhabitant,” when jf that or a similar return had been made to September, he would have saved his distance, and. manifested his diligence by matter of record. As he did not do so, it is insisted that he released his endorsers, and as they were not, when they executed the note now in suit, bound by their previous endorsement either in law or conscience, this note cannot bind them. In this respect the case is assimilated by the appellees to the case of Rallston vs. Sebastian and Bullitt, 3 Bibb, 261.
It has been long settled by this court, that due diligence by suit was necessary to entitle an assignee to a recovery against his. assignor. That there are cases where the want of suit may be excused, all ad-But whether the case where a debtor of known residence, has left the State after the assignment, and before the note becomes due, is an exception, has not been expressly decided so far as we recollect. If such an absence frpm the State as that of Prentiss will not excuse the commence.ment of a suit I know not what kind will suffice. A flight from a multitude of debts, without it appearing that he left an atom behind uncovered by conveyances, to secure those debts, is one of the strongest character. The holder of the note ought *651 either to sue, or suspend all proceedings till the return of the debtor. If he sues, neither his person or estate can be found, and tiie law compels no persea to acts vain and nugatory. If he suspends proceeding, how long shall he wait, for months or years, to see whether the absconding debtor will return? The fact, whether he will or will not return, rests on the debtor, and the creditor has no means of knowing his intensions. I am unwilling to say, that the as-signee must use extraordinary means to recover his debts, by searching for estate by attachment, or that the process of law is necessary to prove the absence of the maker of the note. Straining the diligence necessary to be used before the assignee has his recourse against the assignor to this extent, seems to fee carrying it beyond what is reasonable.
Compromise not decided on-
where the obligor had, befor® *]>e ]0ft tj,e state leaving: his property covered by conveyances, in irustj for other creditors, which is all immediately seized and sold, and under circum-átandes, rendering it improbable he Will over return — held no suit is necessary -to charge the assignor.
*651 it is singular this question has escaped decision heretofore, and it would relieve us from the dilemma of a difference of opinion where two judges alone can adjudicate.
It becomes our duty to say something on the point now, for if it be against the appellees here, it may render unnecessary other questions in the controversy.
It may be urged that the consideration of the question is not necessary, because that the execution of this note by the appellees to Clay, was the compromise of a doubtful right — a pending claim against them not adjudicated or uncertain as to its validity. I will yield for the present the point of compromise, and suppose that the appellees settled no part of the controversy by giving this note, with others of the same date, and concede to them for the sake of argument, the same attitude which they occupied previous to its execution, and grant-that if they were not liable before, the execution of this note did not make them so, and lay.the stress of the question now, on their then existing liability.
Prentiss disappeared thre'e months before the note fell due, having previously covered all his estate by conveyances. His estate was immediately seized and disposed of, and his person remained in- *652 Eibcessible to the process of law, uncle? Olfcumstan-ces not inducing a belief that be would ever return. Was it necessary that Clay should resort to extraordinary process to secure his debt, or .that he should issue ordinary process at all, and procure by a return thereof, that Prentiss was not in the State? I conceive not. I have said this point is; riot expressly decided, and such is the fact, but if we pur'siíé tiré diíFtírent cases which have been decided, we will discover that the law on this point has been more than intimated,- and that some of the cases embrace it in principle.
Casos of assignor and as-signee,- and what required to charge the assignor: i'evieived.
The case of Smallwood vs. Woods, 1 Bibb, 542, was a leading case in settling the doctrine, that due diligence by suit was necessary, and has been adhered to in subsequent cases. But even that case' admits that, the rule is only general arid not universal, and enumerates somé cases which may form proper exceptions, among which absence from the State is one. The case of Sprat vs. M’Kinney. decided afterwards, 1 Bibb 596, impliedly admits that an averment that the obligor was out of the State, would have excused the bringing óf á suit. In the case of Young vs. Cosby, 3 Bibb 227, the necessity of suit is brought within reasonable limits, by stating that the assignor was riot required tó use greater diligence than a man of ordinary prudence would use in a case where he was solely and exclusively interested, and I may add, such as it might be presumed, Ire would use considering the situation and circumstances of the obligee, at the time of the assignment. For instance, if the obligor had been known to have fled from the State at the date of the assignment, it might be presumed, as in contemplation of the parties, that the assignee undertook, either to pursue him whither he had gone, or to take extraordinary measures to subject his estate here, if buy he had, as held by this court in the case of Brinwell vs. Perry, 5 Litt. 104. But if he resided lire at tire date of the assignment, possessing visible estate, and should afterwards dispose of that estate, and depart from the Commonwealth, before the note became due, it cannot be presumed that the assignee undertook to follow him, or to search for *653 him here by process, or to resort to attachments to seize property now belonging to others, which might- subject him, not only to costs, but damages, before he could have his recourse on the assignor. In the case Stapp vs. Bacon’s executor, 1 Marsh. 538; it is said that an averment in a declaration that the obligor was out of the State, ought to be held sufficient to excuse the bringing ol a suit, and the law would not compel the assignee to perform the vain and nugatory act of commencing a suit against a man whose person could not be reached by process. In the case of Clair vs. Barr, 2 Marsh. 256, it is held that where the assignor was dead and died insolvent, both his death and insolvency might be averred and proved by parol, without the introduction of any record,- Of a suit commenced to prove him either dead or insolvent. In the case of Oldham vs. Bergan, 5 Litt. 134, it is held that a temporary absence of the debtor, when the note became due, was sufficient, when shown by parol proof, to excuse a failure to commence a suit, and procure the return of a writ to the first term, to prove the debtors absence, and that he was not bound to resort to the extraordinary process of the law, to subject his estate when absent, and this on the ground, that at the time of the assignment, from the relative situation of the parties, it could not have been contemplated that such extraordinary proceedings should be resorted to before recourse could be had against the assignor.
If the debtor1 at the time of the assignment is a known resident of the slate and apparently solvent, but before the note falls due, fails and sells off his estate and flees from the country, it is not necessary to sue to charge assignor.
*653 These cases warrant me in concluding the law to be, that if the debtor, at the time of the.assignment, is a known resident of the State, and apparently in prosperous circumstances, it could not have entered into the contemplation of the parties, if he should, before the note became due, sell off and dispose of every thing, and flee from the country, as it were to escape process, that the assignee should still issue a writ to prove that he was out of the country, when his flight was notorious, or be bound to issue attachments and seize an estate, which was upon the records of the country conveyed to others to secure debts of immense magnitude. Writs returned “no inhabitant of the county,” could not be. as good evi- *654 Vence that he had absconded from the State, as the parol testimony of individuals, nor could attachments seizing effects conveyed to others by mortgages, prove that these effects were liable, and that those secured by these mortgages, were not due. If, therefore; wé concede to the appellees the unrestrained right of bringing the appellant back to the original question of liability existing against them, on their assignment of the first note of Prentiss, the appellee by them, at the timé when this note was executed, it does appear that they were then liable to a suit on their assignment, without any further act on the part of Clay to make them so, and that the suit which he had brought against Prentiss, then pending, was an act of supererogation, to which he need not have resorted. No person seems to have doubted the circumstances, or residence of Prentiss when the first note was assigned, and it cannot be presumed that Clay was to run the risque of the great change which had taken place when the note became clue. It Was to guard against such changes that they endorsed the note, if all things had remained as ordinary, then Clay could not have reached them without suit. As it really turned out; he was entitled to do so.
Where penfl-ing the action by as-signee against assignor the 'parties agree, and the defendant gives his notes for the amount, payable on a .credit by in-stalments, with security, and the suit is dismissed, the caso is compromised and there bring .no fraud nor mistake, the liability of assignee on his “ssl_Sn~ enquired into,
*654 But I am still unwilling to concede that the evidence conduced to establish the issue, even if it be granted that Clay was bound to sue Prentiss after he had fled. Whether lie was or was not bound to sue Prentiss before he sued the appellees, was a doubtful and unsettled question, and the present division of the court, after mature deliberation, proves it to be so. Was it not competent for the appellees and Clay to settle that doubtful mattef themselves? It certainly was, and if so, how could they settle it? I know of no way they could have taken to have done it, preferable to the one which they have taken; that is, by giving their notes directly for the amount with surety, and exacting at the same moment from Clay, the easement to themselves of installing the debt, and procuring a liberal time to discharge it. The very meaning of the transaction seems to carry with it a design to settle the previous controversy,'and such must have been *655 the intention. We have seen that the first note for part of which the note now in contest was given, was valid, and that there was no evidence conducing to impeach its consideration, and on this point there is no disagreement. This note had become due; Prentiss had fled, after first disposing of his estate. Clay had neglected to sue him to the first term, because he was not accessible by process, and could reasonably, or plausibly at least, contend he was not bound to do. The endorsers on the contrary might insist that he was bound to have issued his writ, and that having failed to do so, he had released them. This was the point of doubt and dispute. They propose to pay the debt and acknowledge themselves wrong and Clay right in this contest, if Clay will divide the debt into instalments and extend the time; and Clay acceeds to the proposal, and as evidence of this conclusion and adjustment, new notes were given; the old is to be sun rendered, and the suit brought is to be dismissed. In thus closing the transaction, it is not pretended either party were ignorant of their respective rights or that there was any fraud by either. All acted with their eyes open. Can it be possible that all this is to go for nothing, and that after the appellees have enjoyed the protracted time, and the division of the debt into a smaller burden at a time, they can bring Clay back to the very point at which he was before this note was executed; and that his ground now is equally as dangerous as it was before and theirs as safe? This is precisely what their present defence attempts to do. It was competent for them to become their own judges and settle this matter instead of bringing it before the tribunals of the country, and they could not do so more firmly, unless they had given to Clay a judgment. But this arrangement, closed by their solemn act and deed, if they are right in their defence, proves nothing, and does nothing but changes the form of action.
Effect of set-dements and oomProiluse3-
There are acts which ought and frequently do es-top parties from travelling back to unravel old transactions and bring up an ancient defence, and the acts of the appellees are of that nature. I can *656 not admit that the case of Rallston vs. Sebastian alK^ Bullitt, although it admits the parties to go back and unravel a settlement based on a mistake, ought to be extended so far as to permit a retracing of steps, where there is neither fraud or mistake. If that case can be so construed as to destroy all notes given in settling doubtful controversies, unless the older of the note had the right side of doubt at the time the note was given, I shall then beg liberty to dispute its authority as a solitary case, opposed to the uniform decisions of the law.
The two Judges set-tin!; in the case not concurring- as to the law of one decision given on the trial below, no mandate on that point.—
But—
The Judges concurring in opinion that ti on on'another point ■was en-otic-mont ed for that cause and new trial a-ivardcd.
Statement,
Decision of the Court.
But as the court is divided in opin« ion as to the extent the court ought to have gone m excluding the evidence from the jury, one judge being of opinion, without deciding on its weight, that although the evidence proved nothing conducing to show that the first note was invalid or founded on an invalid consideration, yet that it conduced to show that the endorsers were released before they executed the last note, through the laches of Clay; and the other judge conceiving that it did not conduce to prove a failure of consideration in either note, even if the proof did not vary from the plea, no mandate can go to exclude the evidence as insufficient or irrelevant.
But there is an entire concurrence in opinion that the evidence did not tend to show a failure of consideration of the first note, and that the instruction gjVen by the court to the jury, tended to leave the .impression on the jury that the evidence did conduce to show a failure of consideration in the first note as a foundation for a failure in the considera-of the second, and that for this cause the judg* ment is erroneous and must be reversed with costs, and the verdict be set aside, and the cause be re* mantled for new proceedings, not inconsistent with this opinion.