JUDGE PETERS
delivered the oranm oe the court.
R. S. C. A. Alexander died at his home in Woodford County on the first day of December, 1867 — childless, having never married — leaving an only brother, A. J. *333 Alexander, and two sisters, Mrs. Lucy A. "Waller and Mrs. Mary B. Deeds, surviving Mm.
Possessed of very large estates in the United States and in Scotland, he on the 21st of March, 1860, made and published his will, to which, in October of the same year, he added a codicil, and on the 4th of January, 1865, he added two others. The will and codicils are all in the handwriting of the testator.
He appointed his brother and James B. Waller, the husband of his sister Lucy, his executors, who after qualifying brought this suit in the court below for a construction of the will, for the advice and direction of the court in its execution generally, but more especially in reference to difficult and doubtful questions arising on the will, stated and numerically presented in the petition.
In order to a correct understanding and satisfactory solution of the difficulties suggested as arising on the will, and for a proper construction of the instrument, it is necessary to state the substance of it.
After the appointment of his executors, he in the next clause gives to his brother all his lands, houses, and tenements in Woodford County, together with all his negroes and stock of every kind, all his agricultural implements, wagons, harness, carriages, buggies, and all his furniture, pictures, books, and plate, either in this country or abroad.
Por the land in Scott County, which he had then recently sold, he directed his executors to collect the proceeds, and apply them to the payment of his debts and the legacies named in his will.
He next bequeathed to Daniel Swigert ten thousand dollars, to Annetta M. Swigert two thousand, and directs that ten thousand dollars shall be invested, in some safe and proper manner, in the names of J. B. Temple, A. J. Alexander, and J. B. Waller as trustees, for the benefit *334 of Annetta M. Swigert during her life, the interest to be paid to her annually, and at her death, should she leave a child or children of the age of twenty-one years, the money to go to such child or children; but if there should be several children, some of them over and some under twenty-one years of age, those over twenty-one are to receive their due proportion, and the residue to be retained by said trustees until the younger children arrive at age, when they are to receive their respective portions, the interest to be applied in the mean time to their support and education; and if Mrs. Swigert should die leaving no child, the ten thousand dollars, at her death, to be paid to his two sisters.
In the next clause he directs his executors to pay to his sister Mary, or to her trustees, the money owing her; to secure which her trustees hold a mortgage on his “ Wood-burn farm,” which farm he desires to leave to his brother, free of any encumbrance whatever; and till the debt be paid off, the interest on it is to be paid from the income derived from the Airdrie estate.
He next directs his executors to sell of his “properties ” in the city of St. Louis or the county back of it, or his property in Kenton County near Covington, or his properties in Chicago, or his land, etc., in Muhlenberg County, Kentucky, such portions as they may think most advantageous to sell, to the extent of one hundred thousand dollars, which sum, as received, together with any other money belonging to his estate which shall come into their hands not disposed of by his will, to be invested in some secure and interest-yielding investment, in the names of A. J. Alexander, J. B. Waller, and some one other person selected by said Alexander and Waller, as trustees, for the benefit of his two sisters, to wdiom the interest shall be paid annually, or semi-annually, one half to each sister *335 during her life; and upon the death of either of them, one half the annual interest shall be paid to her who remains alive; the other half shall be paid to the child or children (should there be any) of her who is dead. But should she who is dead leave no child or children, then the interest on the above sum shall be paid to her who is living; and upon her decease the said interest shall be paid to the child or children of his sister, till the youngest child shall be of the age of twenty-one years, when the money originally invested shall be realized, and the sum equally divided between his nephews and nieces, the children of his sister or sisters.
In the next clause he directs all his other property in this country to be valued, and about one half of it sold, and the proceeds of the sale to be divided between his two sisters; or should they or either of them be dead and leave child or children, one half the proceeds of the sale to go to said child or children, the other half to the sister who is living; but in case both be dead, the proceeds of this sale shall be given, one half to the child or children of one sister, the other half to the child or children of the other sister.
In making the sale above desired to be made, he requests that portion of the property to be disposed of which is least likely to improve in value. The remainder of his property in this country he desires his executors to hold as trustees for the benefit of his nephews and nieces, the children of his two sisters, and to manage it that it may improve in value till the youngest child of either of his sisters shall become of age, when it shall either be divided amongst said nephews and nieces, or sold and the proceeds divided.
In the next clause he says should Ms brother, A. J. Alexander, desire to retain the Airdrie estate in Scotland, *336 he can do so; adding, “And I will it to him. But should he choose to have it sold, he may dispose of the property and the proceeds of it as he may think best. My other property in Scotland is entailed, and belongs of right to him. All of my other property not disposed of by this will I desire to go to my brother and two sisters, one third to each.”
By the first codicil he left a legacy of five thousand dollars to a little Miss Cox, and in the other two he made some changes in the bequests to the Swigerts, about which there is no difficulty, and they need not be inserted.
The first difficulty suggested in the numerical order as presented in the petition is, How or out of what part of the estate are the debts and special legacies to be paid?
Second, does the will take effect on testator’s property, and all of it, as it stood at the time of making the will, or at his death? If at the making of the will, what is to be done with the land acquired after the date of the will ?
Third, is the money on hand at testator’s death, .or the money to be collected, due the estate, to be added to the one hundred thousand dollars directed to be raised by a sale of the St. Louis property, or in the county near that city, or other property named in that paragraph of the will, and to be invested as directed for the use and benefit of Mrs. Waller and Mrs. Deeds? Does the paragraph embrace the means in Scotland, or any money which may arise from the stocks in this country or Scotland?
Fourth, after raising the one hundred thousand dollars, as provided, out of the St. Louis or other property named, what becomes of the remainder of the property named in that paragraph? Does it come under the next item of the will, which directs all of his other properties in this country to be valued, and about one half sold; or does it *337 come under the paragraph which gives the remainder to the executors to be held for nieces and nephews? Did the .legacy to Miss Cox lapse by her dying without issue before testator ?
The following facts are agreed, as appears by a paper filed with the petition:
First, that the testator collected and used all the proceeds of the sale of the land in Scott County referred to in his will.
Second, that said proceeds did not amount to over ninety thousand dollars.
The agreement of the facts contained in the third paragraph of said paper has been by consent of the parties withdrawn, and will not therefore be inserted here.
Fourth, the testator owed, independently of the mortgage debt on the Airdrie estate, debts amounting to about one hundred and fifty thousand dollars.
Fifth, that Malinda Cox, mentioned in the first codicil, died in childhood before the testator.
Sixth, that the testator, after the date of said will, acquired additional real estate in' Woodford County, Ky., in Chicago, and in other places in this country, as to which the said A. J. Alexander and the said J. B. Waller agree the will shall apply, and be construed as if it had been executed immediately previous to his last illness.
Seventh, since the date of the will the other property in Scotland therein referred to as being entailed has been " disentailed,” and the question of title to which they agree must be settled in Scotland, according to the laws of that and not of this country.
It may be here noticed that the agreement that the estate in Scotland on which the entail had been broken should pass by the laws of Scotland, is an agreement to *338 do precisely what the law would have done independent of the agreement.
In Story on Conflict of Laws, section 444, it is said the common law has wisely adhered to the doctrine that the title to real property can pass only in the manner and by the forms and to the extent allowed by the local law; it has-thus cut oft' innumerable disputes, and given simplicity as well as uniformity to its operations. And in the next section the same author says it is universally agreed that the law rei sita is to prevail in relation to all dispositions of immovable property, and the nature and extent of the interest to be alienated. See also section 365 (ibid.), where' it is said, in America it has been broadly declared to be a well-settled rule that any title or interest in land, or in any other real estate, can only be acquired or lost agreeably to the laws of the place where the same is situate. So that not only the estate about which there was an agreement, but all the immovable or real estate the testator owned in Scotland at the time of his death, passed by the laws of that country.
The testator devised the Airdrie estate to his brother, and whether he can take it under the will by the laws of Scotland, where it is located, must be determined by the laws of that country.
Mr. MoncriefF, late Lord Advocate of Scotland, and whose deposition was taken in this case, says: “By the law of Scotland neither the Airdrie estate nor any other heritable or real property of Mr. Alexander in Scotland was conveyed or passed by or under his will; the reason is, by the law of Scotland heritable estate does not pass by will, and can only be conveyed by ‘ disposition toords, de presentid The estate passed by succession to Mr. Alexander’s brother.”
A. J. Alexander then, on the death of the testator, *339 took all the heritable or real estate he owned in Scotland by succession, or as his heir at law, and not as devisee.
As testator at the time of his death owed in Scotland a debt of £15,000, secured by a heritable bond on his Airdrie estate, a question is raised out of what fund that debt is ultimately to be paid. It is conceded that the Airdrie estate is primarily bound for that debt, and the heir must pay it according to the law of Scotland, as stated by Mr. Moncrieff, and can have no relief against any portion of the estate of the deceased in that country for remuneration of the debt in question. But it is asked may he not be reimbursed out of the estate of the testator in this country ?
Scotch heritable bonds, as defined by Story, section 366, Conflict of Laws, are bonds for the payment of money which are secured by a conveyance or charge upon real estate. The Airdrie estate of decedent was charged with the payment of a debt thus secured. Such bonds (the same author says) usually contain not only a charge on the real estate, but a personal obligation to pay the debt. And after describing the solemnities required by the Scotch law to make such bonds valid, he then says there are other collateral consequences growing out of the same doctrine. Thus if a Scotch heir should seek to be exonerated from a heritable bond by the application of personal assets in England, his right would depend on the law of Scotland — that is, the law of the place where the real estate was situate — and would not depend on the law of the place where the personal estate happened locally to be.
In Drummond v. Drummond, cited by the same author, section 487, in which the question was, where a person domiciled in England had real estate in Scotland, on which he granted a heritable bond to secure a debt *340 contracted in England, where he died intestate, and had personal estate, by which of these estates was this debt to be borne?
It was determined that the law of Scotland should prevail, and that the real estate should bear the burden. The authorities therefore are direct to the point that the heir of the Airdrie estate takes it with the encumbrance, and can not be relieved or reimbursed out of any estate of decedent whatever. And this result was intended by the testator, we think, as is apparent from the will itself.
Having devised the “"Woodburn farm” to his brother, which was mortgaged to secure a debt owing by the testator to his sister Mary, he, in a separate clause in his will, gives special directions for the payment of that debt, with the declaration that it is his wish to leave that farm to his brother without any debt or encumbrance of any sort on it; and till this debt be paid off he provides that the interest on it shall be paid from the income derived from the Airdrie estate. His Woodburn estate, as the testator designates it, in Kentucky, he had mortgaged to secure a debt to his sister; his Airdrie estate in Scotland was bound by a heritable bond to secure a debt he owed to an individual there. Both these estates the owner devised to the same individual, and directed the debt for which the one first named is pledged to be paid, because, as he expresses it, he desires to leave that farm to his brother without any debt or encumbrance of any sort on it. As to the other, no such provision is made, and no such intention or desire expressed. While then his attention is specially directed to the subject, the testator provides for the entire exoneration of the one, and that too by increasing the burdens on the other; the logical result of which must be that he intended A. J. Alexander to take the Airdrie estate cum onere and without relief.
*341 In addition to the Scottish debt, the testator left an indebtedness of about one hundred and fifty thousand dollars, and pecuniary legacies of exceeding twenty thousand dollars, other than those left to his sisters, nephews, and nieces, while the whole of his property not devised, exclusive of the estates in Scotland, will not equal in value the one half of said debts and legacies; and the fund which he set apart in his will for the payment thereof he had, after publishing it, collected and otherwise appropriated.
In the execution of the will the important question arises, Out of what fund are said debts and legacies to be paid? It is doubtless true that the general personal estate is primarily bound for the payment of debts; but in marshaling' the assets and fixing the several gradations of liability, the following is the established order therefor: first, personal estate not exempted expressly or by implication; second, lands specially devised and set apart for the payment of debts; third, lands descended; fourth, lands specially devised. (2 Redfield on Law of Wills, 868; 5 Littell, 92-103, McCampbell v. McCampbell.)
But this order only regulates the administration of assets among the representatives, devisees, and legatees of a testator, and does not affect the rights of creditors. It does not appear that any lands were acquired in the United States after the publication of the last codicil annexed to the will, which was a republication ■ of the whole will at the date of the codicil, whether it be so avowed and described or not, as it furnishes conclusive evidence of the testator’s considering his will as then existing. (1 Will, on Executors.) There is, however, an agreement by the adult parties that the will shall speak as if made immediately preceding testator’s death, and that the lands in fact acquired after the publication of the will *342 should pass by it. The lands in Kentucky would have so passed independent of the agreement, but whether the lands in Illinois would have thus passed by the laws of that state is not shown. It is, however, apparent in the record that the agreement is beneficial to the infant devisees, and the court below properly ratified that agreement, and adjudged that the will “took effect on all testator’s property as it stood at his death.’’ All the real estate of testator in the United States must be considered as having passed by his will, and none descended but the real estate in Scotland; and as none of his real estate was devised for* or charged with the payment of debts, and as the general personal estate is insufficient therefor, it is urged by the learned counsel for Mrs. Waller, with much force, that the real estate in Scotland must be ultimately charged with the payment of the residue of the debts and pecuniary legacies.
The rule heretofore quoted certainly sustains that position, if there are no supervening facts in this case which constitute an exception to the rule. Whether or not such facts exist is preliminary to the discussion of the mode of reaching the estate in a foreign country.
The testator declares one of the estates in Scotland is entailed, and belongs to his brother. He could not have then intended that it should be charged with his debts; but it is agreed by the parties that after the publication of his will, and before his death, the entail was broken, and he made no effort to pass it by will. As to the other, he did attempt to dispose of it by will, and failed because by the laws of the country where the estate is situate the testamentary instrument was insufficient to pass the estate, showing, however, no intention to die intestate as to it; and therefore that estate is not within the reason of the rule making descended estates liable for the payment of *343 debts and legacies before devised estates, which is that every devise of real estate is regarded as specific, even where it comes under the general words “all the residue of my estate, real and personal.” (2 Red. on Wills, 870.)
Where an intention is manifested to dispose of the estate by will, and that intention only is defeated by the insufficiency of the instrument according to the law ol the place, the reason for the rule ceases, and the Airdrie estate can not come within its operation. But not so with the other Scottish estate, which it seems must go to the heir encumbered with the payment of debts to the extent that other effects liable therefor fail to satisfy them, and the executors must meet that liability out of the descended estate before the legacy to A. «J. Alexander can be exonerated. The process of reasoning is curious, if not convincing, by which it is attempted to demonstrate the proposition that Mr. Alexander, the testator, intended to dispose of his Cowden Hill estate in Scotland by his will when, after declaring that his brother shall take his Airdrie estate by devise, he says, “my other property in Scotland is entailed, and belongs of right to him;” not only declining to attempt to make a testamentary disposition of it, but assigns the reason why he should not then do so, and never again alludes to it even after the entail was broken, knowing doubtless that his brother would take it as his heir.
The devise to A. J. Alexander of the personal estate in Kentucky, and of his plate, pictures, and furniture, here and abroad, are certainly specific, and so of the one hundred thousand dollars to the sisters, to be raised by a sale of real estate, and the addition thereto of moneys on hand, etc., and also the direction to sell the half of the residue of said lands and pay the proceeds to the sisters. We also conclude that the estate which passed under the *344 clause giving the remainder of his property in this country, to be held by his executors in trust, etc., operates as a specific devise of the real estate of the testator not previously disposed of in this country for the use of the beneficiaries therein described.
We think no fair construction of the language in that clause of the will, in which one hundred thousand dollars are directed to be raised by a sale of real estate, which sum, together with any other money belonging to his estate which shall come into their (the executors’) hands not disposed of by the will to be invested,” etc., can authorize the conclusion that the testator only intended that that portion of the money on hand remaining after the payment of debts, etc,, was to be added to the one hundred thousand dollars for the benefit of his sisters. That intention is certainly not expressed in direct language, and we see nothing in the context to authorize a departure from the plain and unequivocal direction of the application of the funds referred to. Indeed, by looking to the will as written, it appears that the testator had provided for the payment of his debts out of another fund, and although that fund failed because he had otherwise appropriated it in his life-time, still the bequest to the sisters was not thereby altered or diminished.
We concur with the court below that the capital used in running the mills mentioned in the petition, the stocks and bonds in the Louisville association for the improvement of horses, and all the personal estate in Scotland not embraced in the second clause of the will, are first to be applied to the payment of debts and legacies; but do not concur in thus appropriating the money and choses in action on hand at the death of testator, as they are to be applied, as directed, for the benefit of his sisters. Nor do we concur with the court below that the clause devising *345 the remainder of his property in this country is residuary in its character. But as to his lands, it is as specific as the devise of his Woodford lands to his brother, but the estate perhaps not as convenient to identify; and we regard that as a specific devise of the residue of his real estate in the United States not previously disposed of; and it was consequently erroneous to subject said lands next after the personal property, previously described, to the payment of debts. But instead thereof the descended real estate in Scotland, except Airdrie, is liable therefor, and the personal estate bequeathed to A. «T. Alexander, the heir to the Scottish estate, can be substituted therefor, and he thereby made liable to the payment of debts and legacies to the value of said estate. And if that should prove insufficient, the pecuniary legacies other than the one hundred thousand dollars for the benefit of the sisters must be abated to make up the deficiency.
We concur in opinion with the court below, that as Malinda Cox died under twenty-one years of age before the testator, without issue, and the legacy to her was for her personal benefit, it lapsed by her death.
The reference of the ease to the master was correct; and, in addition to. the facts therein directed to be ascertained and reported, he should ascertain and report the value of the real estate in Scotland descended to A. J. Alexander other than that called the Airdrie estate.
For the errors herein stated the judgment is reversed, and the cause is remanded, with directions for further proceedings consistent herewith.