## Davie, et al. v. Allen's Executor, et al.

(Decided April 20, 1923.)

### Appeal from Shelby Circuit Court.

1. Executors and Administrators—Order Directing Application of Specific Bequest to Payment of Debts on Assumption of Insolvency is not "Final Judgment or Order."—Orders directing the executor to sell and apply to the payment of debts

personal property specifically bequeathed, on the assumption the estate was insolvent, are not, before the full payment of the debts and final settlement of the estate, final, so that, after discovery that certain undevised real property belonged to the estate which rendered it solvent, the chancellor could adjudge, as between the special legatees and heirs at law, which property was first liable for the payment of the debts, since a final judgment or order is one which settles the rights of the parties without any further adjudication on the merits.

2.  Wills—Specific Bequests are Impliedly Exempted from Payment of Debts.—Specific bequests of chattels to the kinspeople or intimate friends of testatrix, as appeared from the will itself, some of which were personal effects which it might be assumed testatrix for sentimental reasons desired to go to the particular legatees, are impliedly exempted from the payment of debts if there is other property out of which the debts may be paid.

3.  Executors and Administrators—Order of Application of Property to Payment of Debts Stated.—In providing for the payment of a decedent's debts, the personal estate is first to be subjected to such debts unless exempted expressly or by necessary implication; next, the land specifically set apart by testator for the payment of the debts; third, lands descended; and, fourth, lands specifically devised.

4.  Wills—Undevised Real Estate Applied to Payment of Debts Before Specific Bequests.—Where the testator designated no property from which her debts should be paid but owned certain real estate which she did not devise, such real estate is to be applied to the payment of the debts before specific personal property bequeathed by her which was impliedly exempted from the payment of the debts.

E. B. BEARD for appellants.

E. H. DAVIS, and DELOZIER MOXLEY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

In 1907 John P. Allen, Jr., died, leaving a considerable estate, and by his will designated his wife, Bettie B. Allen, as executrix without bond, and gave to her for life all his property, and at her death the remainder in fee to his son by a former marriage, Theodore S. Allen.

Bettie B. Allen qualified as executrix and took possession of all the property of John P. Allen, Jr., and so retained possession until her death in July, 1916.

She also left a will wherein she directed that her debts and funeral expenses be first paid, and then proceeded to make numerous special bequests of personal property to her relatives and others. The special bequests consisted of bonds of several different corporations, jewelry and

other personal effects.   She designated the Peoples Bank & Trust Company of Shelbyville as her executor, and nowhere in her will did she mention or dispose of any real estate whatsoever, although it afterwards appeared she was in fact the owner in fee of two pieces of real estate in Shelbyville worth in the aggregate six thousand or sixty-five hundred dollars.

At the time of her death it was known by her executor and her heirs at law that she owned one of these pieces of real estate, which, however, was of comparitively little value, not exceeding a thousand or twelve hundred dollars, but all the parties in interest seemed to have been in total ignorance of the fact that she owned another house and lot in Shelbyville of the value of about fifty-five hundred dollars, and all seemed to assume for some time thereafter that the title to that property was in the decedent, John P. Allen, Jr., and therefore passed under his will, at the death of his wife, to his son Theodore S. Allen.

Shortly after the death of Bettie B. Allen, Theodore S. Allen as an individual and as administrator *de bonis non* with the will annexed of John P. Allen, Jr., instituted his equitable action against the executor of Bettie B. Allen and her heirs at law and others, wherein he sought a judgment against the estate of Bettie B. Allen for something over thirteen thousand dollars because of certain assets of his father's estate for which she had not accounted and which were not on hand at her death, and also sought a settlement of the estate of Bettie B. Allen and of John P. Allen, Jr.   In that action Theodore S. Allen was given a judgment for more than thirteen thousand dollars against the estate of Bettie B. Allen, and all the parties being at the time and for nearly three years thereafter in total ignorance of the fact the title to the real estate worth fifty-five hundred dollars was in Bettie B. Allen, thereafter proceeded to settle her estate upon the theory that it was insolvent, and that the whole of it was to be applied to the payment of this judgment of Theodore S. Allen, who was the only creditor.

Thereafter, in January, 1917, the master commissioner filed a settlement made by him with the executor of Bettie B. Allen, which showed the executor had collected certain dividends on certain stocks and bonds and had collected certain bonds that had matured in the meantime, and out of such funds had paid out certain costs of administration and taxes due, which left in its

hands as of that date seventeen hundred and sixty-nine dollars and seventy-nine cents. That settlement also showed there were on hand a large number of articles of personal property, including all of those specifically bequeathed in the will of Bettie B. Allen, and that report was confirmed, no exceptions having been filed thereto,

By a judgment thereafter entered in February, 1917, it was adjudged that the personal chattels in the hands of the executor, as shown by the master commissioner's report, be sold and the proceeds applied to the payment of the judgment of Theodore S. Allen.

Thereafter, at the May term, 1917, the executor filed its report which, after showing all payments and the application of all property on hand to the debt of Theodore S. Allen, except one thousand dollars in bonds of the Courtland Realty Company, left a balance of $2,216.21 unpaid on the judgment of Theodore S. Allen. Thereafter the Courtland Realty Company stock of one thousand dollars was also credited on the Theodore S. Allen judgment, which left unpaid thereof $1,216.21, and at the May term, 1919, of the Shelby circuit court a judgment was entered directing a sale of the real estate in Shelbyville then known by the parties to belong to Bettie B. Allen, which real estate was at the sale bought by Theodore S. Allen for eight hundred dollars.

But while the action to settle the estate of Bettie B. Allen was still pending and before a final settlement thereof, and before a final application of the proceeds to the Allen judgment, it was ascertained by all the parties that the title to the other real estate in Shelbyville, worth about fifty-five hundred dollars, was in Bettie B. Allen and not in Theodore S. Allen, under his father's will, as had theretofore been supposed. Thereupon the executor of Bettie B. Allen brought its separate equitable action in the Shelby circuit court against all the interested parties, asserting the fact that Bettie B. Allen owned the additional real estate, and that all her personl property mentioned and bequeathed in the will as well as all other personal property and real estate theretofore known to have been owned by her had been sold and the proceeds applied to the payment of the judgment of Theodore S. Allen and that same had been insufficient to pay the same, and that since that judgment and since the sale of the personal property the plaintiff had discovered that Bettie B. Allen at the time of her death was in possession of and the absolute owner of the other real estate in Shelbyville.

There was a prayer that the last named real estate be sold and the proceeds thereof be applied to the unpaid judgment and to other claims against the estate of Bettie B. Allen, and to the payment of the specific bequests set forth in the will, and that any surplus that might remain be distributed among the heirs at law.

The parties all being before the court and having presented their claims by pleading, the two actions were consolidated and the court entered a judgment directing a sale of the last named real estate and that the proceeds thereof be applied to the payment of the unpaid debts and costs of administration, and that as the bonds and other articles specifically bequeathed in the will of Bettie B. Allen had all been sold by the executor and the proceeds applied to the payment of debts against the estate, it was adjudged that the legatees named in the will be paid certain specific sums out of the proceeds of the sale of that property in lieu of the special bequests of personal property made to them in the will of Bettie B. Allen, which had therefore been applied to the payment of her debts on the mistaken idea that her estate was insolvent. From that judgment the heirs at law prosecute this appeal.

Two controlling questions seem to be:

First, were the orders of the court directing the executor to sell and apply to the payment of debts the specific personal property named in the bequests, final orders or merely interlocutory orders?

Second, is undevised real estate or specific bequests of personal property first liable for payment of the debts of a testator?

(1) At the time it was ascertained the title to the house and lot in Shelbyville was in Bettie B. Allen, and that therefore her estate was not insolvent, the action to settle her estate was still pending and undertermined; while the court had theretofore directed her executor to sell the personal property specifically bequeathed and apply the same to her debts under the belief that her estate was insolvent, and while the executor, as shown by the reports, had complied with these orders of the court, still the whole matter was yet in the hands of the chancellor. The debts were yet unpaid in full, and it was yet within the power of the chancellor upon the discovery that the title to the real estate was in her, to subject all of her property to the payment of her debts, and to do justice as between her legatees and her heirs at law.

There had been no final application of the special bequests to the payment of debts, for the whole matter was yet in the hands of the chancellor. When, therefore, the discovery was made the estate was solvent, the chancellor was confronted with the duty to adjudge between the special legatees and the heirs at law which property was first liable for the payment of the testatrix's debts.

A final judgment has been defined by this court to be:

"Such an order as at once puts an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy sued for." Trade Discount Company v. J. R. Cox Co., 143 Ky. 515.

In the case of Hartford Fire Insurance Co. v. McDonald, 177 Ky. 838, there is quoted with approval from the case of Lewis v. Campau, 14 Mich. 460 (90 Am. Dec. 245.), the following:

"The difference between interlocutory and final decrees is this, that in the former some further steps are required to be taken to enable the court to adjudicate and settle the rights of the parties, while under a final decree, the party obtains his rights without any further adjudication on the merits, either by the direct operation of the decree itself, or by means of proceedings of a ministerial character in execution of it."

In this case the court had merely directed that the special bequests be sold and the proceeds applied to the payment of debts, and that direction had been followed; but the whole matter was yet in the hands of the chancellor, and when the new situation arose there had been no such final application of such proceeds as took it out of the chancellor's power to do justice between the parties.

We think there is no reason to question that the orders of the court up to that time were only interlocutory, and that it was within its power when the new situation developed to set those orders aside. Perry v. Covington Savings Bank & Trust Co., 195 Ky. 40.

(2) The remaining question is whether specific bequests of personal property or undevised real estate shall first be subjected to the payment of the testator's debts, there being no property of any description specially set apart for that purpose.

The will in this case sets apart with great particularity and precision the specific articles of personal property to go to the named legatees, and while it provides for the payment of the testator's debts it makes no mention whatsoever of the valuable real estate owned by her. The

specific bequests were principally either to her kins-people, her stepson, or to close and intimate friends, as appears from the instrument itself. Some of the articles so bequeathed were her personal jewelry and other personal effects theretofore owned by her deceased husband, and it may be assumed that there were certain sentimental reasons why she desired certain relatives or friends to have these particular articles, and under these circumstances there is an implied exemption of these articles from the payment of debts if there be other property out of which they may be paid, and especially where there is undevised real estate not mentioned in the will or devised to any parties whatever, to be so applied.

In the case of Alexander v. Waller, 6 Bush 330, the testator specified in his will the manner of the payment of his debts, but the means thus set apart by him for their payment were otherwise appropriated by him before his death, and this court held that the debts and specific devises in the will should be paid by marshaling the assets and applying them in the following order, to-wit:

First, personal estate not exempted expressly or by implication;

Second, lands specifically devised and set apart for the payment of debts;

Third, lands descended; and

Fourth, lands specifically devised.

That rule has never been changed in this state, and we therefore find from it that in providing for the payment of a decedent's debts the personal estate is first to be subjected unless exempted expressly or by necessary implication, as in this case; next, lands specifically set apart by the testator for the payment of his debts; third, lands descended; and, fourth, lands specially devised.

We find no difficulty in ascertaining from the testatrix's will that there was by clear implication an exemption of the specially bequeathed articles of personal property from the payment of her debts as against all of her other estate. She provided for the payment of her debts, but she made no disposition whatever of valuable real estate and made no reference whatever to it in her will.

In 28 R. C. L., title "Wills," page 300, we find this statement:

"Neither specific nor general legacies nor personal property charged expressly with the payment of debts will be used to pay such debts until after all real estate

set aside to pay the debts and all intestate real estate have been exhausted.''

Where the testator has set aside by specific bequest designated personal property, but has not mentioned in her will valuable real estate and has died intestate as to it, it seems only fair to presume that she first intended the real estate to be subject to the payment of her debts and that the specified personal property should be exempted from their payment if the real estate was sufficient for that purpose. A. & E. Ency., vol. 19, p. 1313; Trumbo v. Sorrency, 3 T. B. M. 284. Jarman on Wills, vol. E, p. 409; Redfield on Wills, vol. 3, p. 364; Underhill on Wills, vol. 1, p. 515.

Appellant, however, relies upon the case of Morehead's Exor. v. France, 153 Ky. 44, as being contrary to this rule. In that case there was a special bequest of all notes, bonds and cash on hand, and there was a devise of real estate for life and certain general bequests to be paid out of the sale of the real estate after the termination of the life estate. The specific bequests of the personal property and the devise for life to the real estate were to the same persons, and the court held under these circumstances that the specific bequests should first be applied to the payment of the debts.

It will be seen, however, that the situation was not the same as we have here; there the real estate was expressly disposed of, and the court in construing the will applied the general rule that the personal estate must first be subjected to the payment of debts. There is no conflict between the two cases.

Judgment affirmed.