Reversing.
The last will and testament of J.W. Strode, who died domiciled in Fayette county, on the 10th day of September, 1915, has been before this court heretofore in a contest proceeding. See Strode's Executrix v. Strode, 194 Ky. 665. We are now asked to determine from what property belonging to the estate the debts and cost of administration are to be paid. As it is very short we copy the will in full:
 "The last will and testament of J.W. Strode of Fayette county made and published this 14th day of May one thousand nine hundred and ten A.D. In the name of God amen.
 "I, J.W. Strode living near Lexington in the county and state aforesaid of the age of fifty years and being of sound and memory do hereby make, public and declare this by last will and testament in manner following, that is to say:
 "First: It is my will that all my funeral expenses and all my just debts be fully paid.
 "Second: After the payment of my just debts and funeral expenses, I give and bequeath unto Irene B. Strode two hundred and fifty acres of land and the house that she lives in to be hers to do as she sees proper if Irene want to sell the land she can do it for it is hers to do with as she pleas with.
 "Third: I also give and bequeath unto the said Irene B. Strode all personal property that may be in my possession at the time of my death. I give Irene B. Strode half of the Lexington property that I may have thair to be hers to sell if she sees property.
 "Lastly: I nominate and appoint Irene B. Strode to be executor of this my last will and testament hereby revoking all former will by me made. I have hereunto set my hand and seal this the 14th day of May, one thousand nine hundred and ten."
At the time of the death of Strode he owed about $2,300.00. The cost of administration amounted to several thousand dollars. He left a wife, appellee, Irene B. Strode, now executrix, and his father, W.D. Strode, but he had no children. *Page 181 
The question presented by this appeal is, whether the debts and cost of administration should be charged against the personal estate of the deceased, or against the undevised realty mentioned in the will. The lower court held that the debts and funeral expenses were chargeable to the personal estate on the theory that the first clause of the will reading: "It is my will that all my funeral expenses and all just debts be fully paid," and the first part of the second clause which reads: "After the payment of my just debts and funeral expenses I give, etc.," must be held to precede all legacies, thus requiring the executrix, Irene B. Strode, and Irene B. Strode personally, to satisfy the debts of the testator out of his personal estate devised to her before taking the remainder to herself. After copying the second and third clauses of the will the learned chancellor who heard the case below observed:
 "Now what does the testator mean by this will complete in itself, by the words, 'After the payment of my just debts,' c., in the second clause? Is it not answered by the Court of Appeals in the case of Payne v. Wickliffe, 2 A.K. Marshall, page 5? In that case General Benj. Howard made a will in his own handwriting at Portage DeSioux in the Missouri territory. He owned property in Kentucky, and he owned property in Missouri. His personal property was not sufficient to pay his debts and a dispute arose between Payne and the devisees of the property in Kentucky as to their respective liability. Payne contended that the Kentucky property was exclusively charged with the payment of his debts, while the Kentucky devisees claimed that the property in the Missouri territory was liable also for the payment of the debts. . . .
 "After the payment of my debts I devise all the property, which I hold in my own right in Kentucky, to be equally divided amongst my sisters, subject to the use of my parents for life, etc."
It must be conceded that the argument of the chancellor is quite forceful, but we think it overlooks the well established rule of this jurisdiction upon the subject of what part of the estate of a decedent will first be subjected to the payment of debts and costs of administration, part of the estate having been devised and part passing under the statutes, as in this case. *Page 182 
The general rule as stated in 28 R. C. L. 300 it to the effect that interstate property and property set aside by testator to pay his debts are first of all to be used to pay such debts. See also 40 Cyc., 2011.
Strode did not set aside any property for the payment of his debts but merely provided that his just debts and funeral expenses be paid, and then says: "After the payment of my just debts and funeral expenses I give, etc." He died leaving quite a lot of intestate property and the will so shows, for it only disposed of one-half of his Lexington property, which we must assume was real, and we learn from the record that he owned about 185 acres of fine blue grass lands near Lexington which he did not devise to anyone. Thus we see that there was plenty of undevised or intestate property to pay the debts. The same text says that neither specific nor general legacies nor personal property charged expressly with the payment of debts will be used to pay such debts until after all real estate set aside to pay the debts and all intestate real estate have been exhausted. If we apply this rule to the facts before us and hold, as we must, that the gift of personalty to Irene B. Strode was either a general or specific legacy, then it was not subject to the payment of debts until after all real estate set aside for the payment of debts and all intestate real estate have been exhausted. In the case of Alexander v. Waller, 6 Bush 341, we said:
 "In the execution of the will the important question arises, out of what fund are said debts and legacies to be paid? It is doubtless true that the general personal estate is primarily bound for the payment of debts; but in marshaling the assets and fixing the several gradations of liability, the following is the established order therefor: First, personal estate not exempt expressly or by implication; second, lands specially devised and set apart for the payment of debts; third, lands descended; fourth, lands specially devised."
This rule was expressly followed and approved in the case of Davis v. Allen's Executor, 198 Ky. 669, the court adding:
 "Where the testator has set aside by specific bequest designated personal property, but has not mentioned in her will valuable real estate and has *Page 183 
died intestate as to it, it seems only fair to presume that she first intended the real estate to be subject to the payment of her debts and that the specified personal property should be exempted from their payment if the real estate was sufficient for that purpose. A. E. Ency., vol. 19 p. 1313; Trumbo v. Sorrency, 3 T. B. M. 284; Jarman on Wills, vol. E p. 409; Redfield on Wills, vol. 3 p. 364; Underhill on Wills, vol. 1. p. 515."
The general rule appears to be to the same effect, as evidenced by Elliott v. Carter, 9 Gratt. 541 (Va.), where it was said:
 "The following rule, determining in order in which the different funds or subjects of property constituting the estate of a deceased testator shall be applied to the payment of debts:
 "(1) The personal estate at large, not exempted by the terms of the will or necessary implication.
 "(2) Real estate, or an interest therein, expressly set apart by the will for the payment of debts.
"(3, Real estate descended to the heir.
 "(4) Real or personal property expressly charged with payment of debts, and then, subject to such charge, specifically devised or bequeathed.
"(5) General pecuniary legacies.
"(6) Specific legacies.
"(7) Real estate devised by the will."
Applying the rule so expressed in the foregoing cases to the facts of this case, we are compelled to hold that the debts and cost of administration of the estate were properly chargeable first to the undevised real property, all the personal property having passed by general legacy to Irene B. Strode. We do not think the language of the will providing for the payment of just debts and funeral expenses and saying, "After the payment of my just debts and funeral expenses I give," etc., sufficiently indicates a fixed purpose on the part of the testator to charge the personalty with the payment of his debts, as so ably argued by the learned chancellor. Finding it necessary under our well established rule to reach a different conclusion to that expressed by the chancellor, the judgment is reversed, with direction to enter one in accordance with this opinion. *Page 184