## Greenway et al. v. Irvine's Executor et al.

(Decided December 10, 1929.)

(As Modified, on Denial of Rehearing, June 20, 1930.)

GRANT E. LILLY for appellants.

BURNAM & GREENLEAF, H. T. DUNCAN and WALKER & WHITE for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Reversing.

The matter of the estate of Mrs. Elizabeth Irvine, who died in 1920, is again before this court. See Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385; White v. Greenway, 209 Ky. 368, 272 S. W. 920; Irvine v. Greenway, 220 Ky. 388, 295 S. W. 445; and Walker v. Irvine's Executor, 225 Ky. 699, 9 S. W. (2d) 1020.

This appeal relates to the fees of the executor and his counsel, and presents these questions: (1) Did appellants have the right to have the amounts fixed by jury?

(2) Was the submission of the case for decision of the chancellor premature? (3) Should the court have considered premiums paid by the executor on his bond when fixing his compensation? (4) Are the fees excessive? (5) Out of what funds should the fees be paid?

We shall dispose of the questions in the order stated.

■ Appellants contend that contested claims for fees of fiduciaries and their counsel should be determined as a common-law action, and that their motion for a trial by jury should have been sustained. We waive the question whether this application was seasonably made (section 10 of the Civil Code), as we are of the opinion the motion was properly overruled on the merits. In the proper discharge of his duty the executor employed counsel who diligently and ably represented him throughout the extended litigation. Fees paid for such services are as essentially a part of the cost of administration as any other expenses incurred. Reed v. Reed, 74 S. W. 207, 24 Ky. Law Rep. 2438, and McMillen's Executors v. McElroy, 186 Ky. 644, 217 S. W. 927. The fixing of these fees was a matter included in this suit in equity for the settlement of the estate, and was but a collateral to the main proceeding. There are at least three sections of the statutes which may be construed as providing that the court sitting in equity shall determine and allow the personal representative of an estate reasonable compensation and necessary expenses, fees, and costs, viz., sections 489, 889, and 3883, Ky. St. Courts of equity have always had inherent and undisputed jurisdiction in cases of trusts and over the conduct of those appointed to execute them. This, of course, includes representatives of deceased persons' estates (10 R. C. L. 349, 357) and the settlement of their accounts, covering, of course, the subordinate or incidental matter of allowance of fees and expenses. If the issue of compensation stood alone, it would not afford a proper basis for equitable jurisdiction (11 R. C. L. 228), but as an item involved in the settlement, and cognizable in equity, the guaranty of the Constitution to a trial by jury contended for by appellants does not apply. Wilson v. Carrollton Tobacco Warehouse Company, 182 Ky. 433, 206 S. W. 618. The chancellor might have sought the views of a jury, but that was discretionary with him, as would have been the acceptance of its verdict, since it cannot be said that the question was a distinct legal issue.

Marawick v. Mortineck's Guardian, 128 Ky. 155, 107 S. W. 759, 32 Ky. Law Rep. 971.

■ Reference to the former opinions will disclose the nature and the extent of this litigation. As long ago as May 26, 1921, the case was referred to the master commissioner to make a final settlement of the accounts of the executor. Subsequent orders of re-reference and reception of reports were made, but these have no special application to the subject of fixing compensation for the executor or his counsel. On December 31, 1928, the master commissioner was directed to make a settlement of the executor's accounts on January 15, 1929. He filed his report on February 13th, in which he recommended the allowance of the executor's claim for a fee of $12,500 and attorneys' fee of $20,000.

A statement of services rendered had been filed with the commissioner on February 12th. On February 15th the appellants moved the court to require the attorneys to itemize the service rendered. On the 19th they filed a special demurrer to the commissioner's report on the ground that there was no order of reference to the commissioner to determine the fees, and because no motions for the allowance had been made in court. On the 22d the motion was made for a trial by jury of the issue as to the reasonableness of the fee. Also on the 22d exceptions to the report of the commissioner were filed on several grounds, including those upon which the special demurrer was based, and the absence of the notice of the commissioner's sittings and of the proof of the claims with an opportunity for the parties interested to be heard in opposition. On the same day appears an order reciting the fact that, although at the preceding October term the court, from the bench, had directed a reference to the commissioner for this purpose, no order had been entered covering the matter, and the case was thereupon re-referred, with directions to the commissioner to consider and inquire into the matter of proper allowance and to report his recommendations immediately to the court. On the 25th the motion for a trial of the issue out of chancery was overruled. On the 27th the commissioner made a report which was a duplicate of that filed by him on the 13th. On the same day the executor and attorneys formally moved the court to allow and authorize payment to the attorneys of the sum of $20,000, and on that day also the appellant filed exceptions to the report, which duplicated those theretofore filed.

The principal grounds of the exceptions were the unreasonableness of the fees recommended or allowed, the basis of which was set out in detail, and the allowance of $1,700 for premiums paid on the executor's bond. A trial was had by the chancellor on the exceptions on March 2d, witnesses being introduced both in support and in opposition to the allowances. Upon the testimony and the personal knowledge of the court as to the litigation and customary fees for like service in Madison county and his judicial district (as is recited in the judgment) the court fixed the executor's fee at $10,000 and the attorneys' at $20,000.

As has been shown throughout the proceedings, appellants' counsel was present and pleading to these reports. There is no suggestion that the matter did not stand for trial, except that the bill of exceptions shows an objection was raised to the trial, and on his motion for a continuance an affidavit was dictated to a stenographer as to what certain absent witnesses would testify. However, counsel stated to the court that he had no personal knowledge that the witnesses named would testify as to the unreasonableness of the fees as he had stated in his affidavit, and the court declined to consider it. No affidavit was ever filed in the case.

Counsel argues that a motion for the allowance of fees should be treated as the filing of an action, and that the motion must contain averments necessary to be made in a petition on the same demands, and then that time should be given accordingly for responding. He relies on section 898 of the Statutes, which is as follows:

> "A motion or rule of court shall be considered an action; but when made in a pending suit or action an attorney's fee shall not be recovered as a part of the costs of the motion or rule."

This section can have no application to a case pending in court in so far as it may affect a party to a suit, especially one being represented by counsel, present in court, and participating in the proceedings, as the record shows appellants' counsel was at all times doing. There is no provision for a notice or summons to be served on such a party. He must take cognizance of the proceedings. A motion applicable to this state of case is defined in section 623 of the Civil Code, thus: "An application for an order is a motion." And the contention that sec-

tions 445 and 446 relate to the character and time of service of a notice is likewise without merit, for they relate to summary proceedings and judgments which may be had on motion.

The only question is whether the chancellor abused his discretion in not granting counsel for appellants further time for the preparation for the hearing. From the foregoing recital of the proceedings and the result of the hearing by the chancellor, it will be seen, as we think, that there was no abuse of discretion in determining the matter as it was determined.

■ In allowing $10,000 to the executor for his services, the court considered the payment by him of $1,700 for premiums on a fiducial bond, which was in a large sum and extended over several years, the testatrix having died in 1920. Prior to 1926, such expenditures could not have been charged against the estate, but the Legislature in that year enacted what is now section 3837a of the Statutes (Ky. St. Supp. 1928), providing that, when a personal representative or other fiduciary shall procure as surety on his bond an incorporated surety company, "the necessary and reasonable cost incident thereto shall be a lawful charge against the estate in the hands of such fiduciary as other expenses of administration, and in his settlement such fiduciary shall be entitled to credit by the amount actually paid by him for such purpose, subject to the approval of the judge or court who shall have approved the bond." It is not clear whether the provisions of this act should be applied as of the settlement of the fiduciary accounts and extend over the entire period covered by the bond or only the period since its adoption. We do not find it necessary to construe the act in this respect, for, even though it be considered as a proper charge against the estate pro tanto, we are of the opinion that in fixing the amount of fees allowed to the executor it was just and equitable to take into consideration the entire sum paid out by him for these premiums. The amount allowed him, including it, was not in excess of that authorized by the statute.

■ The services rendered by the executor of this large estate and that of his counsel have been arduous and able. They have extended over a period of nine years. The estate as appraised for inheritance taxes was in excess of $400,000, and some idea can be gathered of the character and extent of the litigation by a perusal of the former opinions of this court. Besides those cases

604

there were other suits which did not reach this court, and also extended litigation in the state of Missouri. Numerous cases are cited by appellant for comparison and as indicative of the excessive character of the fees. Attention is also directed to the salaries of the Governor and the members of this court. "Comparisons are odious," says the philosopher. "A laborer is worthy of his hire," says the Scripture.

From a consideration of the evidence introduced on the trial and the records in the case reaching this court, as well as the knowledge by its members of the services rendered by counsel in them, we have no trouble in determining that the fees allowable are reasonable. To enumerate the different items of labor and the things accomplished, or even to undertake to abstract the evidence, would unduly lengthen the opinion, and as a precedent would not be of especial value, for the fixing of fees in each case must rest upon its peculiar facts and circumstances. The elements entering into the value of services and the factors determining the amount of fees have often been recited and are well known. In equity cases this court weighs the evidence and determines the facts for itself (Johnston v. Williams, 187 Ky. 764, 220 S. W. 1057), but the finding of the chancellor receives much consideration. Especially persuasive is the chancellor's conclusion in fixing fees and allowances in a case tried by him, as he was enabled to know and appreciate the amount and character of services for which compensation is being allowed. We have recently had for consideration the matter of attorneys' fees fixed by the chancellor at less than the expressed opinions of several lawyers (Erdman's Adm'r v. Erdman's Adm'r, 231 Ky. 219, 21 S. W. (2d) 258, 259, and there said:

"This court also has actual knowledge of the facts, and will not indulge in any fiction of ignorance, but will bring to bear that knowledge in reviewing the decision of the lower court.

"The courts are not required to accept the opinion evidence of value of such professional services, even though it be not controverted. We are not precluded from considering the record of the case in which the services were rendered, and we may reach a conclusion as to the reasonableness of attorney's fees, independent of expert testimony. May v. Walter's Ex'rs, 149 Ky. 749, 149 S. W. 1014; Stockhold-

ers of First State Bank v. First State Bank's Receiver, 159 Ky. 484, 167 S. W. 678.''

The court has had no hesitancy in concluding that the allowances fixed by the chancellor are reasonable and should be sustained.

The will of Mrs. Irvine is lengthy and involved with a multitude of bequests, and combines with the disposition of her own estate the execution of powers granted her in the will of her husband. · It appears there was some personal estate not specifically bequeathed, but this was insufficient to pay the costs of administration, including the fees above stated. The lower court adjudged that these costs should be paid, first, out of any undevised personal property in the hands of the executor not heretofore used in the payment of taxes; and, second, the deficiency should be paid out of the residuum of the estate, that is, out of the farm which was held by this court in Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385, to have passed to William I. Greenway. However, it was ordered that, since Greenway had received a bequest of $44,000 in bonds, that personal property of his might be subjected to the payment of the costs instead of selling the farm for that purpose. There is no dispute that the undevised personal property should be first applied to the satisfaction of the costs. But appellants are insisting that the farm should not be subjected to the payment of costs, and argue that under the opinion of this court Greenway received the farm from William Irvine through the execution of a power vested in Mrs. Irvine, and not as the direct residuary devisee of Mrs. Irvine. The other side contends that the matter was left undecided in the former opinion. On this appeal it is to the interest of the parties to reverse the respective contentions originally made, and appellees, at least, have done so. We are of the opinion, however, that this farm is not subject to the payment of the costs of administration, and pass over this issue.

In Strode v. Strode, 213 Ky. 179, 280 S. W. 921, the court considered the question of what funds or portions of an estate are subject to the payment of the costs of administration, and the order in which they should be applied. All the personal property having passed by general legacy, it was held in that case that the undevised real estate should be used for the purpose. But

we have in the instant case some undevised personalty which should be applied as far as it will go.

Mrs. Irvine owned a considerable quantity of real estate in Missouri, and attempted to dispose of it, but the Supreme Court of that state, in White v. Greenway, 303 Mo. 691, 263 S. W. 104, held that her will was ineffectual to pass real estate in Missouri, although it was valid as a disposition of her personal property there. It appears in the record that this real estate has been sold for $92,500 and the proceeds distributed among Mrs. Irvine's heirs at law. We are of the opinion that, since the heirs who received the proceeds of that undevised real estate are parties to this suit, such part of Mrs. Irvine's estate as is subject to the control of the Madison circuit court and payable to them should be used for the purpose of satisfying so much of the costs as remain unpaid after applying the undevised personalty. We have as authority for this action Brand v. Brand, 144 Ky. 343, 138 S. W. 372, in which it was held, as summarized in the syllabus of the Southwestern Reporter:

"The court, in an action to set aside as fraudulent a conveyance by the debtor, in trust for his wife, of land in the state and lands in other states, having acquired jurisdiction of the debtor's widow and of the land in the state, may, on adjudging the conveyance of the land in the state fraudulent, require her to apply, in satisfaction of her dower in such land, money which she has derived by sale of part of the lands in the other states, at least, where if by suits in those states the conveyance be set aside as to the lands therein, there will be enough left of those lands to satisfy her dower interest therein."

The appellees, to whom the Missouri property was undertaken to be devised, invoke the rule that where a testator exonerates specific property from the payment of debts, his intention thus manifested will be respected. It is argued the testatrix's intention in this regard was manifested by the specific devise of that real estate, and although the devise failed the court under the rule stated should not direct it or its proceeds to the payment of administrative costs. The rule is, of course, recognized and is sound in principle; but we cannot agree to its application here. Suppose a testator had given specific direction that none of his personal property should be

subjected to debts and costs of administration and his will be held wholly invalid. The settlement of the estate would be as in the case of intestacy and the personal property first subjected to the payment of those obligations. His attempted exoneration through an expressed intention would not be recognized. The same principle must be applied where there is partial intestacy.

We cannot sustain the argument that the courts of Kentucky may not under the facts subject the proceeds of that undevised realty when those heirs who collected the proceeds are before them. By ancillary proceeding we do not doubt the executor could have subjected the Missouri property to the payment of the costs of administration. Nor can we sustain the contention that the Brand case, supra, is to be distinguished because the element of fraud was involved in it. In this matter a mistake is the factor. The executor has delivered to those heirs assets belonging to them but which were in his hands subject to the orders of the court. Before doing that he might have required refunding bonds or security for costs.

It is made to appear that the executor does not have in his possession sufficient funds belonging to some of those held responsible to pay their proportionate part of the costs and fees. He should first satisfy the court costs other than the executor's and attorneys' fees out of the undevised personalty; then apply the balance of that personalty, if any, to those fees; then prorate the balance among the heirs designated who are before the court, subjecting assets in his hands going to them respectively. An order should be made directing those who do not have sufficient funds in control of the executor and court to refund their proportionate part of the balance. We have no doubt, in recognition of their liability, the order of refund will be respected. If not, we see nothing in the way of entering a formal judgment, leaving to the executor his right to collect it in the foreign jurisdictions. See 7 R. C. L. 789; 15 C. J. 298.

The judgment of the lower court is therefore reversed, with directions to modify it to the extent indicated.

Whole court sitting.