## Hampton et al. v. O'Rear et al.

November 9, 1948.

Rehearing denied December 17, 1948.

Harvey T. Lisle, D. L. Pendleton, Leslie W. Morris and Marion Rider for appellants.

Edward C. O'Rear and Reid Prewitt for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On the 12th day of October, 1944, L. E. Griggs, a resident of Montgomery County, executed his last will and testament; in Item II of which he provided for the creation of a charitable trust in the following language:

"I own the building at the southwest corner of Main and Maysville Streets in Mt. Sterling, Kentucky. As well at this time I own a one-half undivided interest in Trimble Theater properties at the northeast corner of Main and North Bank Streets in Mt. Sterling, Kentucky, being that entire property facing Main Street, and bounded on the east by the property of Robert H. Winn and on the west by said Bank Street. It is my present purpose to buy the remaining half of said property, and the provisions herein made as to said property shall cover whatever interest, part or all, in same which I may own at my death.

"I give said property at the corner of Main and Maysville Streets, and my interest, part or all, in said Theater property, in perpetuity to the Mary Chiles Hospital of Mt. Sterling, Kentucky, upon the following terms and provisions and conditions *and not otherwise,* to-wit:

"(a) *To erect a building on said Hospital's grounds as owned in the month of October, 1944, or to erect a wing to the present Mary Chiles Hospital main building,* either of which structures to be dedicated to, and used for, the following purpose, to-wit:

"1. *The ground floor to be used for the hospitalization of people of Negro blood, for whom there shall be provided a suitable visitors' or waiting room, and as well one or more wards and patients' rooms, all sufficient to care for not less than ten patients at any one time. Said floor shall be equipped with suitable toilets, a bath, and other modern hospital equipment suitable for said purposes.*

"2. *The second story to be used and provided for laboratory purposes, for nursery purposes, for patient's rooms or wards, or other purposes, all appurtenant to, and for, the general uses of said Hospital, and as its needs may be.*

"(b) The said building or wing shall be ample for said purposes, and shall cost not more than twelve thousand five hundred ($12,500.00) dollars. Should Miss Bess Pelley be Superintendent of said Hospital when said structure comes on to be erected, I direct that her counsel and advise be sought in all the details of such construction.

"(c) The fund to erect said building shall be built up from the net income from said properties, and when said sum sufficient thereunto shall have been so built up, the said building or wing shall forthwith be constructed.

"(d) I empower Robert H. Winn as my representative or trustee *incident to the acceptance and establishment of said trust* and the due qualification of a trustee thereover, and I empower him, the said Winn, as such to take any and all legal steps or actions necessary thereunto.

"(e) *Thereafter, such part of said net annual income as may be necessary, but not to exceed one-half of said annual net income from said properties, shall be applied, as same accrues, to the maintenance and upkeep of said Negro portion of said structure, and as well to bear the expenses of indigent patients of said race served therein.*

"(f) *The excess, if any, from and over the just set out one-half of said income, and the other one-half of said income, all as same accrues, shall be added to the permanent endowment fund of said Mary Chiles Hospital and shall be annually invested and made profitable for said Hospital's general uses; and I specifically provide, to make clear my intent, that each year's income accruing as provided in this Section (f) shall become a part of the principal of this trust, and that only the income earned on said principal may be expended for all the said Hospital's general purposes.*

"(g) Said Mary Chiles Hospital shall keep permanent and exact records of its management of said properties and funds, and shall file annual detailed settlements thereof in the Montgomery County Court, and see that same are there duly recorded.

"I charge the Montgomery County Court to take

especial care, in requiring and auditing such settlements, and I confer upon any reputable citizen, or citizens, of Mt. Sterling the right to file, and be heard upon, exceptions to such settlement, and to enforce by legal steps, if need be, *a strict adherence to and compliance with these provisions*.

"(h) Lastly, this building and endowment shall be known as the 'Kate Smith Fund,' in perpetual memorial to the mother of my hereinafter named wife, for whose sound sense and kindness I have an affectionate and reverent memory, which I believe to be shared by the peoples of her community."

(For ready reference and to afford convenience to the reader we have italicized certain words in copying Item II above).

Shortly after executing his will Mr. Griggs departed this life, and the will was probated in the Montgomery County Court on the 21st day of November, 1944. Pursuant to action of its board of trustees at a meeting held on the 15th day of November, 1945, the Mary Chiles Hospital, by and through its president and secretary, executed, acknowledged, and within a year after notice of the probate of the will, to wit: the 20th day of November, 1945, left for record in the office of the clerk of the Montgomery County Court a deed disclaiming the devise contained in Item II of the will. On the following day this action was commenced by Honorable Robert H. Winn, under the power granted him in Item II (d), together with his co-plaintiffs W. A. Scott, a Negro minister of the Baptist Faith, James Bean, the Duly Elected and Acting Superintendent of Negro schools in Mt. Sterling, H. L. Davis, a Negro minister of the Methodist Faith, Eugene Patterson, a Negro pastor of the Christian Faith, Booker T. George, a truckman of the Negro race, and John W. Powell, an undertaker by occupation and of the Negro race, all of whom are residents of the city of Mt. Sterling, in Montgomery County. The colored plaintiffs sued for themselves and all other members of their race within the hospitalization zone of Mt. Sterling. All of the heirs of L. E. Griggs, deceased, together with the Mary Chiles Hospital, and Honorable Henry H. Bramblett, who previously had been appointed by the Court as conservator and trustee over the L. E.

Griggs's "real estate hospitalization provisions" and in whose hands were certain assets derived from the property mentioned in Item II of the will, were made parties defendant.

In addition to averring the above facts the petition alleged that the purpose of the testator in incorporating Item II in the will was to create charity for the hospitalization of members of the Negro race, and to dedicate the property mentioned in Item II and income therefrom to such end and purpose; that the refusal of the Mary Chiles Hospital to qualify and act as trustee did not destroy or render invalid the provisions of Item II but rendered them impossible of performance merely as to the manner in which they were to be performed; and, unless the Court sitting in equity by judgment should approve the establishment of proper facilities for the hospitalization of Negroes on real estate other than that designated in Item II and appoint a trustee to exercise the duties empowered to the Mary Chiles Hospital thereunder, the declared purposes of the testator would be defeated. The petition closed with the following prayer:

"Wherefore, the premises considered, plaintiffs pray that this court of equity take jurisdiction and control of the matters herein set up; that it provide, by orders and judgment, for the continuation of said trust and for the hospitalization of persons of the Negro race at a point or place in Mt. Sterling, or in its immediate vicinity, other than the grounds of the said Mary Chiles Hospital as named in said will; that it, the Court, appoint a trustee or trustees over the said trust, with all due and incident powers to the handling of the properties named in Item II of said will; that the Court provide by proper steps and proceedings through said trustee or trustees or through its own action for the obtaining of grounds and facilities in Mt. Sterling or its vicinity for the hospitalization of people of the Negro race, and for the applying thereunto the said properties named in said Item II of said will and the income therefrom; that the defendant Bramblett be required to file herein his report of his acts as Conservator and Trustee; that it be adjudged that none of the above-named defendants, the blood kin of the said L. E. Griggs, nor the Mary Chiles Hospital, take or have or own any interest of any nature

or kind in and to the said properties named in Item II of said will, or any income therefrom; that a warning order attorney be appointed to defend for the non-resident defendants, Mrs. Herbert Brandenburg and Mrs. Jay L. Chambers; and they pray for their costs and for all other relief proper in the premises, and to equity and good conscience belonging.''

The defendants answered and counterclaimed thus making the issues which will be developed and discussed in the course of this opinion. In the meantime Honorable Robert H. Winn died, and such fact having been suggested to the Court, Honorable Edward C. O'Rear was appointed trustee, and, having accepted the appointment, the action was revived in his name together with the other plaintiffs named in the petition; thereupon the plaintiffs entered their appearances to the action so revived and amended. On submission the Chancellor sustained a demurrer to the answer and counterclaim and entered judgment in accordance with the prayer of the petition, the correctness of which decision is now before this Court.

We will refer to appellees as the plaintiffs and appellants as defendants. Plaintiffs invoke the cy pres doctrine as construed and adopted by this Court in many decisions. The general doctrine is stated in the American Law Institute's Restatement of the Law on Trusts, Volume Two, Section 399, page 1208, it is:

''If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.''

This principle has been adopted in this jurisdiction and has never been departed from. The history of the doctrine as adopted is given in the late case of Citizens Fidelity Bank and Trust Co. et al. v. Isaac W. Bernheim Foundation, 305 Ky. 802, 205 S. W. 2d 1003, 1006 et seq.; but the converse of the principle of the cy pres doctrine likewise has been upheld by our courts; viz.,

where a trust is created for the benefit of a particular charity or particular organization and it is impossible to determine that the settlor was more intent on a general charitable purpose than for the benefit of the particular charity or organization, the fund or property constituting the corpus of the trust estate may not be devoted to any purpose not provided for by the terms of the trust. In other words, where the settlor intended to part with title to the property devised in the event only that such property should be used for a particular purpose, and in a particular manner or by a particular person, the cy pres doctrine will not be applied and the property will revert to the settlor or his heirs. Brewer v. Baxter's Ex'r, 295 Ky. 416, 174 S. W. 2d 698.

In invoking the cy pres doctrine plaintiffs construe Item II of the will to manifest clearly an intention on the part of the settlor to establish a trust for the hospitalization of Negroes in the Mt. Sterling hospitalization area to the exclusion of the other purposes expressed in Item II. In other words, plaintiffs would have Item II construed as to manifest a primary intention on the part of the settlor to create a charity for the hospitalization of Negroes in and near Mt. Sterling and the other provisions and conditions contained in Item II merely to be directory in nature and incident to the primary purpose; and where, as here, a situation arises rendering the so-called incidental provisions incapable of being performed, the dominant purpose of the settlor will not fail but will, and must, be accomplished cy pres, or "as nearly as may be." Defendants have no quarrel with plaintiffs in respect to this Court's construction of the cy pres doctrine nor do the plaintiffs or defendants take issue with each other on any other principle of law in effect in this jurisdiction by which the Courts must be guided in construing the provisions of a charitable trust created by will.

Thus it becomes our duty, as best we may, to determine the intention of the settlor by what he said in Item II of his will and the meager showing of the circumstances under which the will was drafted. We do not use the word meager in the foregoing sentence as an indication that the parties could have developed a more extensive view of such circumstances. We use it merely as an explanation of our failure to disclose more than two

circumstances shown in the record which we think may be considered in arriving at the intention of the settlor, they are: (1) at the time of drafting the will, and for many weeks prior thereto, the testator was a patient in the Mary Chiles Hospital, and; (2) at the time of drafting of the will there was no facility available in Mt. Sterling for the hospitalization of Negro patients. We now will attempt to analyze Item II of the will and to endeavor to determine the settlor's intention.

The devise, which constitutes the corpus of the trust estate, was made to the Mary Chiles Hospital upon condition that the settlor's directions in respect to certain purposes should be carried out "and not otherwise." Thus, by employing the words "and not otherwise," the conditions, upon the fulfillment of which title to the property would pass, are by reason of such fact conditions precedent in contradistinction to conditions subsequent. The first condition is that a building shall be erected costing not in excess of $12,500 as soon as the net income from the corpus of the estate shall have accumulated in a sufficient amount to defray the cost of construction. The settlor provided in Item II, section 2(h) that the building should be a perpetual memorial to the mother of his wife "for whose sound sense and kindness I have an affectionate and reverent memory, which I believe to be shared by the peoples of her community." He designated the site of the building (memorial) with particularity. He designated with equal particularity the purposes for which the building and the income from the property of the trust estate should be used. One of the purposes for which the building was to be used is the hospitalization of Negro patients, but it will be noted that the settlor directed that only half of the building should be used for that purpose and that only half of the net income of the trust estate after the construction of the building should be used for the benefit of Negro patients. The other half of the building was directed to be used by the Mary Chiles Hospital, and no other, for the general uses of "said Hospital," and the other half of the net income of the property after the construction of the building is required to be invested and the income from such investments to be used by the Mary Chiles Hospital, and no other, for "said Hospital's general uses." That the settlor recognized the fact that the de-

vise might not be accepted is manifest by the words he employed in item II, section 2(d), wherein he empowered Honorable Robert H. Winn to act as his (the settlor's) representative "incident to the acceptance and establishment of said trust." The Mary Chiles Hospital is the only corporation, organization, or person whose acceptance of the property and consent to carry out the conditions imposed on said property is necessary; and, likewise, it is the only corporation, organization, or person, which under the terms of the will or the provisions of KRS 394.320, has the right to refuse the devise and disclaim the benefits of the trust estate.

The last manifestation of the intention of the settlor that the devise should depend upon fulfillment of the "conditions" is contained in Item II, section 2(g), wherein he charges the Montgomery County Court with enforcing "strict adherence to and compliance with these provisions (conditions)." By inserting this clause and the words "and not otherwise," it is clear that a mere substantial compliance with the conditions imposed would not serve the purposes for which the trust was created. That being true, the cy pres doctrine may not be applied; and, because the devisee duly disclaimed its rights under the conditions imposed, we have no alternative but to declare the purposes of the trust to have failed, and that neither the corpus of the estate nor the income therefrom may be used to establish a hospital for persons of Negro blood on any other property in the hospitalization area of Mt. Sterling.

We have given no weight to the fact that the settlor was a patient in the Mary Chiles Hospital at the time he drafted his will, and we think that the lack of facilities for hospitalization of persons of Negro blood in or around Mt. Sterling is not a circumstance sufficient to overcome the expressed intention of the settlor.

The judgment is reversed with directions that it be set aside and that another be entered in conformity with this opinion.

Judge Sims dissenting.

I am in thorough accord with the opinion of the majority as to the law governing this case, but I disagree sharply with them on the application of the law to the

10

facts. In my judgment, the view expressed by the majority is too narrow as to the intention of testator regarding the charity he attempted to establish in his will. In construing that instrument, the majority look at one small brick and lose sight of the building testator sought to erect.

Perhaps, the most difficult task a court must perform is to arrive at the intention of a testator from the language used in the will. Ordinarily, that instrument is all a court has to guide it. Often there is nothing to show the testator ever thought of the particular situation which confronts the court, or ever had any actual intent as to such a situation. When judges say they are interpreting the intention of a testator, what they are doing in the majority of times is deciding what should be done with his property on contingencies which he did not contemplate at the time the will was written.

It is clear to my mind that the paramount intention of the settlor here was to create a charity in starting a small hospital for negroes in or near Mt. Sterling. Whether the building be erected in one place or another was not his paramount concern, but the uppermost thought in his mind was to start in a modest way a building so that an humble race might receive hospital care. True, he preferred it to be established in a certain locality, but surely he never intended his charity should fail because the location of the building he contemplated had to be changed.

Let this question be posed. A wealthy testator devises a million dollars for a hospital to be erected on a certain street for underprivileged people, and the will indicates he wants the building erected at no other place. Before or about the time of his death, the city is zoned and all buildings but private residences are excluded from the street designated in the will for the erection of the hospital. Should the trust fail because the building could not be erected where testator designated? Or should the court take a broader view and say the paramount intention of testator was to erect a hospital for an underprivileged class rather than that the entire charity must fail because the hospital could not be erected where testator desired and directed? It is patent the testator is more interested in establishing the hospital

than in designating the place it should be built, and the court should so hold.

In the instant case, I feel the majority placed more importance upon the location of the building than upon the intention of testator to establish a small foundation for a worthy charity.

For the reasons given, I most respectfully dissent.