## McKinney et al. v. Mt. Sterling Nat. Bank

May 3, 1949.

Harvey T. Lisle and D. L. Pendleton for appellants.

Lewis A. White for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This appeal is an aftermath of the case of Hampton v. O'Rear, 309 Ky. 1, 215 S.W.2d 539, which construed Item II of the will of L. E. Griggs, who died testate a resident of Montgomery County, Kentucky, on November 12, 1944. That case involved a construction of Item II only of decedent's will, and in construing that item this court held that the charitable trust which he sought to set up could be carried out only in accord with the terms and conditions laid down in that clause of his will and that the fund provided by him for that purpose could not be applied under the cy pres doctrine to another, though somewhat similar project, which was sought to be set up by the successor to the trustee whom testator had named. The Mary Chiles Hospital, beneficiary of the trust under Item II, having disclaimed the devise under the conditions under which it was

made, the result was a complete failure of the will to dispose of the two pieces of property mentioned in said Item II, and consequently that property did not pass under the will of Mr. Griggs, but descended in fee to his heirs at law as undevised estate in accordance with the provisions of KRS 394.500.

After the mandate went down in the above styled case and a judgment was entered in accordance therewith in the lower court, the executor under the Griggs will, appellee herein, filed an intervening petition, answer and cross-petition in which it stated in substance that as executor it had expended $16,081.18 in payment of debts, taxes and costs of administration and there would be additional expenditures for such items before the estate was finally settled, and prayed that it be adjudged that all such debts, taxes and costs of administration already paid and to be paid, be paid out of income from the real estate referred to and described in Item II of decedent's will, which income is in the hands of H. H. Bramblet as conservator, and that if such net income be insufficient for these purposes that a sufficiency of the real estate referred to in Item II be sold and the proceeds applied to these purposes.

To this intervening petition the heirs at law, who would inherit the real estate represented by the lapsed legacy and the accumulated income therefrom, filed a demurrer. A stipulation signed by attorneys representing all parties in interest was filed and on March 5, 1949, a judgment was entered adjudging that the executor recover of the defendants, heirs at law of deceased, all amounts paid and to be paid by the executor in discharging all debts, funeral expenses, costs of administration and taxes, except federal estate and Kentucky inheritance taxes, to be paid first out of the funds in the hands of H. H. Bramblet, conservator and if such funds are insufficient, then out of the undevised real estate mentioned in Item II of the will of L. E. Griggs, deceased. It further directed that the federal estate taxes assessed against the estate of decedent and heretofore paid by the executor shall be paid by each of the legatees, devisees and heirs at law of decedent in the proportion which each share bears to the total estate valued for tax purposes and the executor was allowed to recover out of the undevised estate referred to in Item

II of the will a sufficient amount to repay it the money it expended in payment of said federal estate taxes, all of which had been paid, for the heirs at law other than the residuary legatees, as may hereafter be determined by the court. It further directed that the Kentucky inheritance taxes shall be paid by each legatee, devisee and heir at law in the amount assessed against each by the Department of Revenue of the State of Kentucky.

The heirs at law, appellants herein, appealed from all the foregoing judgment and the executor, appellee herein, appeals from so much of said judgment as holds that the executor shall not recover total federal estate taxes and total Kentucky inheritance taxes out of the undevised property mentioned in Item II of the will of decedent and the income therefrom.

### The Questions Presented

It will thus be seen that two questions are presented for our decision: First, are the debts, ordinary taxes and costs of administration to be paid out of the personal property or out of the undevised property which appellants as heirs at law inherit as a lapsed legacy by reason of the failure of Item II of decedent's will? Second, should the federal estate and Kentucky inheritance taxes be paid proportionately by each devisee, legatee and heir at law, as held by the lower court, or should these taxes also be paid out of the undevised property inherited by the heirs?

I. It is, of course, fundamental law that in construing a will the intention of the testator is controlling and if from the will there is any indication as to how the testator wanted his debts, costs of administration and estate and inheritance taxes allocated, his wishes must be followed; if not, then we must follow general principles of law as established in this and other jurisdictions. It will therefore be necessary to set out such portions of the will as might throw light on the question. Since Item II is the longest item of the will and it is copied in full in the case of Hampton v. O'Rear, supra, it will not be recopied here. That item has already been construed and its only relation to the present case is that the real estate mentioned in that item is the undevised real estate involved in the present case. In the

interest of brevity, it will also be unnecessary to copy Item III to Item VIII, inclusive, since they cover small specific money bequests to four individuals and two institutions and contain nothing that might assist in arriving at testator's intention as to the question involved. The remaining items of the will follow:

"Item I

"I direct the payment of all my debts, taxes of every kind, and the expenses of my burial and the winding up of my estate.

"Item IX

"I direct any personal representative who may execute the provisions of this will, to convert into cash as soon as reasonably may be, all my real estate, other than that named in Item II hereof, at private or public sale, on such terms as to said personal representative may seem wise, and I authorize it or him to make conveyances of my realty as fully as I might in person.

"Item X

"Of all the rest and residue of my estate, after the payment of the above-named specific gifts, and the debts, taxes and expenses of my estate, I create a trust fund, to endure as long as my wife, Mrs. Mary Smith Griggs, may survive me. I name the Mt. Sterling National Bank as trustee of said trust. I authorize and enpower it, or any other trustee who may *exercise* said trust, to manage, sell, transfer and convey, and to reinvest, sell, transfer and convey, any and all properties in said trust as fully as I might if living.

"From the net earnings of said trust, and from such part of the principal thereof as in its judgment may be necessary, I direct the trustee exercising said trust to provide ample support, in sickness and in health, for my said wife as long as she may live.

"Said trust shall be exercised under due qualification in, and due settlements and supervision made in, the Montgomery County Court.

"Item XI

"Upon the death of my said wife, or upon my death, should she die before me, I give whatever may be in said residue as follows, and as hereinafter conditioned :

"One-fourth thereof to the issue, per stirpes, of my dead brother, C. L. Griggs.

"One-fourth thereof to the issue, per stirpes, of my dead sister, Mrs. Mollie Elkin.

"One-fourth thereof to the issue, per stirpes, of my sister, Mrs. Oleith McKinney.

"One-fourth thereof to my sister, Mrs. Howard Hampton.

"I further provide that none of my said devisees, save those living at and to be ascertained as of the time of the death of the last survivor of my said wife or me, shall take anything hereunder. It is my intent that said relations shall take said residue upon the death of the survivor of my said wife or me just as if they were then taking from under the laws of descent and distribution then effective in the State of Kentucky.

## "Item XII

"Lastly, I nominate the Mt. Sterling National Bank as the executor of this will; and I clothe it as such, and any other personal representative who may execute this will, with every power that I might have over all properties in my estate, save the said properties named in Item II hereof dedicated as under the said Kate Smith fund."

It will be seen that Item I contains the usual language directing the payment of debts and costs and contains no direction as to how or from what source they should be paid, as of course he could have done. Item X sets up a trust fund for testator's wife during her lifetime and Item XI gives the residue of that fund to certain collateral relatives. Testator's wife died shortly after his death and the trustee of the trust set up for her has filed its settlement as such and turned the trust fund over to itself as executor for distribution to the residuary legatees mentioned in Item XI.

In very excellent briefs filed by both sides of the controversy particular parts of the above will are discussed and analyzed and each side points to some provision which it thinks spells out an intention by the testator which supports his respective contention. After

a careful consideration of these contentions and the will as a whole we are unable to find anything in the language of the will as a whole which would indicate the intention of the testator bearing on the question involved. It is apparent that testator did not intend to die intestate as to any of his property, it being his hope and expectation that the main provision of his will, the charitable trust which seemed nearest his heart, be carried out. Only by reason of its failure was there any undevised property, which came about through operation of law, not through any action on his part. We therefore have an estate, part of which will go to specific devisees, part to residuary legatees, and part, resulting from the lapsed legacy, to the heirs at law as undevised property. Before making this distribution all debts, costs of administration and federal estate and state inheritance taxes must be paid. If paid out of the personal property of the estate, valued at roughly $55,000, it will come out of the share of the residuary legatees. If paid out of the undevised real estate, valued roughly also at $55,000, it will come out of the share of the heirs at law, some of whom are also residuary legatees.

If there is any question of law well settled in Kentucky, it seems to be this one. The general rule is laid down in 69 C. J. Sec. 2570, page 1226, as follows:

"While the testator may, by charging specified property with the payment of his debts, exempt undisposed of property from such payment, his intention to do this must be very clearly manifested by the terms which he uses, for as a general rule, regardless of an express direction to sell certain property and apply the proceeds to the payment of his debts, or as a bequest of property subjecting it, as against other property bequeathed, to the payment of debts, property undisposed of by the will must first be resorted to for payment of testator's debts."

Beginning with Highbaugh v. Highbaugh's Ex'rs, 1 S. W. 422, 8 Ky. Law Rep. 257, followed by Davis v. Allen's Executor, 198 Ky. 669, 249 S. W. 1013, Strode v. Strode, 213 Ky. 179, 280 S. W. 921, Greenway v. Irvine's Ex'r, 234 Ky. 597, 28 S. W. 2d 760, Northcutt's Ex'x v. Farmers National Bank, 292 Ky. 628, 166 S. W. 2d 971, 144 A. L. R. 472; McLeod v. Andrews, 303 Ky. 46, 196

S. W. 2d 473, and the most recent case of Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S. W. 2d 328, the rule enunciated in 69 C. J., as above set out, and the general principle that undevised property must first be used for the payment of debts and costs of administration rather than specific legacies or the residuary estate, was followed. This ruling and the reasons therefor are fully set out in the above cases and others cited therein and no purpose would be served by repeating the reasons for the rule as set out in these cases which are readily available to anyone wishing to pursue the question further.

One of the cases listed above, Davis v. Allen's Ex'r, 198 Ky. 669, 249 S. W. 1013, is cited and relied on by appellants as supporting their contention that debts and costs must come out of the personal property because it is set out in that opinion that the order of marshalling of assets and applying them is as follows: (1) personal estate not exempted expressly or by implication; (2) lands specifically devised and set apart for the payment of debts; (3) lands descended; and (4) lands specifically devised. This court held in that case that the undevised estate was first liable for the payment of the debts of the testatrix and the balance of the estate should go toward paying the legacies under the will of decedent. Therefore, the real point decided in that case was that undevised property should go to the payment of debts and costs before specific bequests could be used for those purposes, just as it has held in some of the other cases cited above that undevised property must be used for this purpose ahead of residuary property. We think the judgment of the lower court so holding in the present case is correct.

II. As to the cross-appeal of appellees and their contention that the lower court erred in adjudging that federal estate taxes and state inheritance taxes be paid out of the share of each legatee, devisee and heir at law, and not out of the undevised property, little need be said. The question with reference to both kinds of taxes was again decided adversely to the contention of appellees in the recent case of Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S. W. 2d 328, following a line of cases where the questions had previously been decided. Appellees admit the efficacy of that case and say

they have no quarrel with it but they think it inapplicable to the present case. They contend that the will of the testator shows his intention otherwise; that the will indicated that decedent wanted his widow and residuary legatees to have the balance of the estate after specific bequests were satisfied and by subjecting the undevised property passing to the heirs at law to the payment of all estate and inheritance taxes, the intended objects of decedent's bounty would benefit rather than the heirs at law, some of whom were disinherited by him, but are now enjoying a windfall. We think there is no such intention shown by the testator, just as we thought, as expressed in the first part of this opinion, that there was nothing in the will to show his intention as to what part of his estate the debts and costs of administration should be paid from. There being no controlling intention manifested, we must apply the rules as enunciated by our decisions. We think our latest ruling in the Louisville Trust Co. v. Walter case, supra, is applicable and that the court below correctly so adjudged.

The judgment of the lower court is therefore affirmed both on the original appeal and on the cross-appeal.